UNITED STATES of America,
Plaintiff–Appellee,

v.

Raymundo MARTINEZ–VITELA,
Defendant–Appellant.

No. 98–50440.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 8, 1999

Filed Oct. 26, 1999

Benjamin P. Lechman, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Jonah H. Goldstein, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

Before: D.W. NELSON, REINHARDT, and TROTT, Circuit Judges.

### ORDER

The opinion filed July 19, 1999, is hereby withdrawn.

### OPINION

TROTT, Circuit Judge:

### OVERVIEW

Raymundo Martinez–Vitela ("Martinez–Vitela") appeals his conviction, pursuant to a conditional guilty plea, for being a deported alien found in the United States in violation of 8 U.S.C. § 1326. The charge was based on a summary deportation proceeding that reinstated a prior deportation order. On appeal, Martinez–Vitela argues that the district court erred in holding that (1) the reinstatement of deportation constituted a deportation or removal within the requirements of 8 U.S.C. § 1326(a); (2) the reinstatement of deportation comports with due process; and (3) admission of the prior deportation did not violate Rule 404(b) of the Federal Rules of Evidence.

We have jurisdiction pursuant to 28 U.S.C. § 1291. Here we need hold only that if the underlying deportation or removal proceeding, which is being reinstated, satisfied due process, and the individual previously deported has acknowledged that he again entered the country illegally, the reinstatement procedures provided for

in 8 U.S.C. § 1231(a)(5) and 8 C.F.R. § 241.8 also satisfy due process.

## BACKGROUND

Martinez–Vitela is a citizen of Mexico who illegally entered the United States for the first time on November 1, 1994. On April 25, 1995, Martinez–Vitela was given notice of a deportation hearing and ordered to show cause why he should not be deported. At the deportation hearing, Martinez–Vitela admitted the charges, conceding that he had no legal right to be in the United States and that he was deportable (the "1995 deportation proceeding").[1] The immigration judge found that Martinez–Vitela was legally deportable, and on August 24, 1995, Martinez–Vitela was deported. Martinez–Vitela waived his right to appeal the deportation order, and did not request relief from deportation. He does not now challenge the district court's finding that he incurred no prejudice as the result of any procedural defect in the 1995 proceeding.

In December 1995, Martinez–Vitela illegally reentered the United States. After being advised of his rights, Martinez–Vitela made a sworn statement admitting (1) his identity; (2) that he had previously been deported; (3) that he had reentered illegally; and (4) that he had not applied to the Attorney General for permission to reenter. Based on this statement, and pursuant to 8 U.S.C. § 1231(a)(5) and 8 C.F.R. § 241.8, an immigration patrol agent reinstated the prior order of deportation, and Martinez–Vitela was deported on December 24, 1997 (the "1997 reinstatement proceeding"). Pursuant to 8 U.S.C. § 1251(a)(5), Martinez–Vitela was not represented by counsel, did not receive a hearing, and was not entitled to judicial review.

On January 8, 1998, Martinez–Vitela illegally reentered the United States again.

He was apprehended by Border Patrol agents and, after waiving his Miranda rights, admitted that he had been deported and had illegally reentered the United States. Based on this conduct, Martinez–Vitela was indicted for reentering the United States after being deported or removed, in violation of § 1326. The indictment alleged that Martinez–Vitela, "after having been deported and removed from the United States to Mexico, through the Port of Entry, Calexico, California, on or about December 24, 1997, . . . was found in San Diego County" without the permission of the Attorney General.

Martinez–Vitela moved to dismiss the indictment.[2] That motion was denied. Martinez–Vitela then pleaded guilty, but reserved the right to appeal the district court's denial of his motion to dismiss.

## DISCUSSION

### I. "Deported, or Removed"

■ In order to support a prosecution under § 1326, the government must prove that Martinez–Vitela reentered or attempted to reenter the United States without the Attorney General's consent after being "denied admission, excluded, deported or removed." *See* 8 U.S.C. § 1326. Martinez–Vitela argues that the 1997 proceeding reinstating the 1995 deportation order does not satisfy the "deported, or removed" element of § 1326(a)(1). The government counters that Martinez–Vitela waived this issue by failing to reserve it in his conditional guilty plea and by failing to raise it before the district court. Whether an appellant has waived his statutory right of appeal is an issue of law reviewed de novo. *United States v. Martinez,* 143 F.3d 1266, 1270 (9th Cir.1998).

Issues not expressly reserved for appeal in a conditional plea agreement are waived

---

1. The grounds for deportation included that Martinez–Vitela (1) was not a U.S. citizen; (2) had illegally entered the United States; and (3) had been convicted of a number of crimes, including corporal injury of a spouse or cohabitant and sexual assault.

2. The grounds for the motion are disputed and will be dealt with below.

and therefore unreviewable. *See* Fed. R.Crim.P. 11(a)(2); *United States v. Arzate–Nunez,* 18 F.3d 730, 737 (9th Cir. 1994); *United States v. Echegoyen,* 799 F.2d 1271, 1276 (9th Cir.1986). In the plea agreement, Martinez–Vitela reserved the right to appeal "the adverse ruling of the district court on April 10, 1998, denying his motion to dismiss the indictment." Consequently, any argument not made in the motion to dismiss is waived and unreviewable.

■ Martinez–Vitela contends that this argument was asserted in his memorandum in support of his motion to dismiss and in oral argument before the district court. In his brief to this court, Martinez–Vitela quotes language from his memorandum in support of the motion to dismiss exactly as follows:

> The indictment in this case alleges a deportation and removal that took place on December 24, 1997. This alleged deportation and removal was not conducted with an immigration judge or in any form of judicial setting. Rather, the removal of Mr. Martinez–Vitela on December 24, 1997 was perpetrated by reinstating an alleged prior deportation that was alleged to have occurred over two years prior, on August 25, 1995. . . . First, the plain language of subsection (d) references a "deportation." The instant case concerns a removal not a deportation. Second, assuming arguendo, that this instant removal qualified as a deportation for purposes of this section, the nature of the Constitutional violation precludes the imposition of any exhaustion requirement.

Read in context, this language does not support Martinez–Vitela's argument that he had presented this statutory construction argument to the district court. The first half of the quoted language appears in the section of Martinez–Vitela's memorandum arguing that because the 1997 reinstatement proceeding violated due process, it could not be used as the predicate offense under *United States v. Mendoza–Lopez,* 481 U.S. 828, 840, 107 S.Ct. 2148, 95

L.Ed.2d 772 (1987). The part of the quote after the ellipses appearing in the passage he cites in his appellate brief comes from a completely different section of the memorandum, almost two pages later. In that later section, Martinez–Vitela argued that the 1997 reinstatement proceeding was a removal, not a deportation. This argument was unrelated to the statutory requirements of § 1326(a). Indeed, Martinez–Vitela specifically admitted in that section of his brief that "[t]he instant case concerns a removal." Martinez–Vitela's memorandum was arguing that the 1997 reinstatement proceeding was not a deportation to avoid the exhaustion of administrative remedies requirement of § 1326(d). However, neither section makes the argument that the 1997 reinstatement proceeding was not a deportation or removal as required by § 1326(a)(1).

The same is true for Martinez–Vitela's oral argument. At oral argument, Martinez–Vitela argued as follows:

> [o]bviously, as the Court is aware, I'm making a motion to dismiss the indictment based on the deportation that's alleged within the indictment. I believe that that removal proceeding does not qualify, one, as a deportation; two, assuming arguendo that in fact does [sic], I don't believe that it comports with minimal due process requirements.

Again, Martinez–Vitela was arguing that the 1997 reinstatement proceeding was a removal and not a deportation. He never argued it was not a removal and, after this brief statement, Martinez–Vitela never again argued that it was not a deportation. The government did not address the argument, and the district court never ruled on it. The argument that removal pursuant to a reinstatement proceeding does not satisfy the "deported, or removed" element of § 1326(a) was not made in Martinez–Vitela's motion to dismiss and is therefore waived and unreviewable. *See* Fed. R.Crim.P. 11(a)(2); *Arzate–Nunez,* 18 F.3d at 737; *Echegoyen,* 799 F.2d at 1276.

## II. Due Process

■ Martinez–Vitela argues that the 1997 reinstatement of his 1995 deportation order did not comport with due process requirements sufficient for it to be used as the underlying deportation or removal in a criminal prosecution under § 1326. We review de novo the district court's denial of a collateral attack on a prior deportation proceeding that was used as a predicate for prosecution under § 1326. *United States v. Gutierrez–Alba,* 128 F.3d 1324, 1326 (9th Cir.1997).

■ A defendant charged under § 1326 may collaterally attack the validity of the underlying removal or deportation, but only under limited circumstances.[3] *Mendoza–Lopez,* 481 U.S. at 837–39, 107 S.Ct. 2148; *United States v. Zarate–Martinez,* 133 F.3d 1194, 1197 (9th Cir.1998). In order to collaterally challenge the deportation, the defendant must prove that (1) the underlying proceeding was "so procedurally flawed that it 'effectively eliminate[d] the right of the alien to obtain judicial review,'" and (2) the defendant was prejudiced by the error. *United States v. Alvarado–Delgado,* 98 F.3d 492, 493 (9th Cir.1996) (en banc) (quoting *Mendoza–Lopez,* 481 U.S. at 839, 107 S.Ct. 2148); *see also United States v. Proa–Tovar,* 975 F.2d 592, 595 (9th Cir.1992). If, however, the defendant validly waived the right to obtain judicial review of the removal order, then the order is not subject to collateral attack. *See United States v. Estrada–Torres,* 179 F.3d 776, 779 (9th Cir.1999). Only if appeal from the prior deportation was not validly waived will we look for a due process violation and prejudice. *See Mendoza–Lopez,* 481 U.S. at 839–40, 107 S.Ct. 2148; *Estrada–Torres,* 179 F.3d 776, 779. Here, Martinez–Vitela had no right to appeal the 1997 removal order and thus is free to attack it collaterally.

Martinez–Vitela argues that the 1997 reinstatement proceeding violated due process because (1) he was not given a hearing; (2) an INS officer determined whether the prior deportation could be reinstated; (3) there was no right to counsel; and (4) there was no right to appeal. He claims that because the 1997 deportation proceeding was the only proceeding alleged in the indictment, we should limit our review to the process provided in 1997 to determine whether Martinez–Vitela's due process rights were violated. We disagree.

■ Due process cannot be viewed in such a vacuum, but must be viewed in the light of the entire proceeding and all procedures given. *See Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quoting *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands."), and *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961) ("'Due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstance.")). The process due in a certain proceeding requires us to consider (1) the private interest that will be affected by the proceeding; (2) the risk of an erroneous deprivation of such interest and the probable value of additional safeguards; and (3) the governmental interest in not providing the additional safeguards. *Id.* at 335, 96 S.Ct. 893.

Reinstatement proceedings ordinarily provide sufficient due process to ensure that the person is not wrongfully deported. Initially, an alien is given a full removal hearing and is entitled to notice, an opportunity to secure counsel, a hearing, and judicial review of that hearing. *See* 8 U.S.C. §§ 1229, 1229a (West Supp.1999). Only if the alien reenters the United States after being lawfully removed pursuant to those procedures may the govern-

---

**3.** Lawfulness of the proceeding is not an element of the § 1326 offense, and therefore a defendant is not entitled to have the issue determined by a jury. *United States v. Alvarado–Delgado,* 98 F.3d 492, 493 (9th Cir.1996) (en banc).

ment deport the alien through a reinstatement proceeding. 8 U.S.C. § 1231(a)(5) (West Supp.1999). In order for a removal or deportation to be reinstated, the INS must confirm the alien's identity, ensure that the alien had been previously removed, and ensure that he had reentered illegally. The INS agent is also required to obtain the prior deportation order, investigate any claim of lawful entry and listen to any oral statement the alien wishes to make contesting the reinstatement. *Id.* In essence, the reinstatement procedure simply asks whether circumstances have changed since the alien was lawfully deported. If nothing has changed, there is no reason to re-litigate those facts; the alien may be lawfully removed again without violating due process.

■■■ We hold that where the government relies on a reinstatement proceeding as the predicate deportation or removal for a § 1326 prosecution, the alien maintains the limited right under *Mendoza–Lopez* to show that the original proceeding was "so procedurally flawed that it 'effectively eliminate[d] the right of the alien to obtain judicial review,'" and that the due process violation prejudiced him. *Alvarado–Delgado,* 98 F.3d at 493 (quoting *Mendoza–Lopez,* 481 U.S. at 840, 107 S.Ct. 2148). If the underlying proceeding violated due process as described in *Mendoza–Lopez* and the alien was prejudiced by that deficiency, neither the reinstatement proceeding nor the original proceeding which was reinstated may be used as the predicate offense for the § 1326 prosecution.

*See Alvarado–Delgado,* 98 F.3d at 493. In so holding, we note that while our rule would be the same, the question we answer would not arise if the indictment referred to both the original deportation or removal and to the reinstatement. The better practice would be to include both proceedings in the indictment.

■■■ Applying this holding to the instant case, we agree with the district court's assessment of this issue. As the district court held, Martinez–Vitela was given all process due in the 1995 deportation proceeding.[4] He was given notice and could have obtained counsel, but he chose not to do so. His case was heard by an unbiased immigration judge, and Martinez–Vitela had the right to appeal that immigration judge's decision. At that proceeding, Martinez–Vitela admitted that he had no legal right to be in the United States, and was ordered to be deported. Martinez–Vitela waived his right to appeal that decision and does not argue that that waiver was involuntary, unknowing or in any way invalid. Consequently, the 1995 proceeding satisfied the requirements of *Mendoza–Lopez* and is not subject to collateral attack. *See Estrada–Torres,* 179 F.3d 776, 779.[5]

The 1997 reinstatement proceeding simply re-effectuated the 1995 decision. After being found in the United States, Martinez–Vitela waived his Miranda rights and admitted that he was the Raymundo Martinez–Vitela who had previously been deported, that he had no legal right to be in

4. Martinez–Vitela requests remand to the district court because of confusion in the district court's ruling over whether he was required to prove prejudice in the 1995 departure proceeding. We deny this request. The requirement of proving prejudice has been clearly established by this court since 1992. *See Proa–Tovar,* 975 F.2d at 594–95. Martinez–Vitela recognized his burden and argued, before the district court, that he was prejudiced by a due process violation in the 1995 deportation. Specifically, Martinez–Vitela argued that he was entitled to relief under 8 U.S.C. § 1326(c). The district court rejected that argument, and Martinez–Vitela has not appealed that decision. Additionally, Martinez–

Vitela has not argued or alleged facts that could be developed through an evidentiary hearing and that would prove prejudice.

5. Martinez–Vitela argues that § 1182(h) may have been a defense to deportation at the 1995 deportation proceeding. However, even if Martinez–Vitela had a plausible ground for relief at the 1995 deportation proceeding, he failed to assert it, admitted that he had no legal right to be in the United States, was properly deported, and waived any right to appeal the deportation order. Consequently, any defense Martinez–Vitela may have had to deportation at the 1995 deportation proceeding was waived.

the United States, and that nothing had changed concerning his legal right to be in the United States since the 1995 proceeding. Therefore, the determination of the 1995 proceeding was reinstated and he was removed from the United States. Because the 1995 proceeding provided all required due process and Martinez–Vitela's proceeding was simply a reenforcement of the 1995 proceeding, we conclude that the 1997 proceeding satisfied due process requirements and can serve as the predicate for prosecution under § 1326 in this case. We note that we need not consider whether the proceedings would have been adequate had Martinez–Vitela asserted, for example, that he was not in the country unlawfully, or that he was not the person who had been previously deported. We also do not reach the issue, not raised in this case, of the permissibility of retroactively applying 8 U.S.C. § 1231(a)(5) to individuals with pre-IIRIRA deportation or exclusion orders.

### III. Rule 404(b) of the Federal Rules of Evidence

■ Finally, Martinez–Vitela argues that the district court erred in holding that admission of evidence of Martinez–Vitela's deportation pursuant to the 1995 deportation proceeding did not violate Rule 404(b). However, the government never introduced evidence of any prior bad act because Martinez–Vitela pled guilty before trial. Where there was no trial, and the evidence was not admitted, it is impossible to determine whether the evidence would have been introduced, for what purpose the evidence would have been admitted, what limiting instruction the district court might have included, and whether admission of the evidence would have been unduly prejudicial. The issue is therefore moot and we do not address it. *See Unit-*

ed States v. Arias–Villanueva, 998 F.2d 1491, 1502 (9th Cir.1993) (holding that appeal from a district court's denial of a motion to suppress hearing was moot where the government did not introduce the evidence that the defendant had moved to suppress).[6]

### CONCLUSION

For the reasons outlined above, we affirm.

AFFIRMED.

■

---

**6.** Martinez–Vitela argues that the admission of prior bad acts "underscore[s] the violative nature of utilizing reinstatements as predicates in § 1326 proceedings." Although using reinstatement proceedings as the underlying deportation or removal risks admitting evidence of prior attempts to reenter the United States, that does not invalidate the use of reinstatements as the underlying proceeding. A court could prevent or cure any prejudice by admitting the reinstatement proceeding, but prohibiting introduction of the proceeding which was reinstated or strictly limiting the purpose for which such evidence is admitted.