UNITED STATES of America,
Plaintiff–Appellee,

v.

Juan Manuel MURO–INCLAN,
Defendant–Appellant.

No. 00–50016

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 15, 2001.

Filed May 8, 2001.

Maria Elena Stratton, Federal Public Defender, Richard D. Burda, Deputy Federal Public Defender, Los Angeles, California, for the appellant.

Timothy Searight, Assistant United States Attorney, Los Angeles, California, for the appellee.

Before: TASHIMA and FISHER, Circuit Judges, and ZILLY, District Judge.[1]

ZILLY, District Judge:

Appellant Juan Manuel Muro–Inclan appeals the district court's denial of his motion to dismiss the indictment. Appellant argues that he could not be convicted under 8 U.S.C. § 1326 as an illegal alien found in the United States following deportation because his due process rights were violated at his prior deportation proceedings. We affirm.

## PROCEDURAL HISTORY

On February 2, 1999, Appellant Juan Manuel Muro–Inclan was indicted on one count of Illegal Alien Found in the United States Following Deportation in violation of 8 U.S.C. § 1326. On May 27, 1999, Appellant filed a Motion to Dismiss Charge Based On Unlawful Deportation Hearings. In the motion, Appellant argued that the underlying deportation proceedings were invalid because he had never been informed of his possible eligibility for a waiver of deportation under 8 U.S.C. 1182(h)(a "212(h) waiver"), and therefore the deportation proceedings violated his due process rights. On June 23, 1999, the District Court held a hearing on the motion, and on June 25, 1999, the court issued a written Order denying the motion. Appellant then entered a conditional guilty plea, reserving his right to appeal the denial of the motion to dismiss. At sentencing, Appellant received a 16 point enhancement based on prior aggravated felony convic-

---

1. Honorable Thomas Zilly, United States District Judge for the Western District of Washington, sitting by designation.

tions, and he was sentenced to 77 months incarceration.

Appellant then filed the present appeal of the denial of his motion to dismiss. He has also filed a supplemental brief arguing for the first time on appeal that his sentence of 77 months violates *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Appellant alleges that *Apprendi* was violated because his sentence was enhanced based on prior aggravated felony convictions that were neither admitted nor submitted to a jury and proven beyond a reasonable doubt.

## IMMIGRATION HISTORY

Appellant was brought to the United States by his parents as an infant. In 1984, he married a United States citizen, and they have three children who are United States citizens. Appellant's parents are lawful permanent residents of the United States. Appellant has never achieved lawful permanent resident status. He has been deported from the United States on five separate occasions.

## LEGAL STANDARD

A. Due process requirements.

■■■ The Court of Appeals reviews *de novo* the denial of a motion to dismiss an 8 U.S.C. § 1326 indictment when the motion to dismiss is based on alleged due process defects in an underlying deportation proceeding. *See United States v. Garza–Sanchez,* 217 F.3d 806, 808 (9th Cir.2000), citing *United States v. Proa–Tovar,* 975 F.2d 592, 594 (9th Cir.1992)(en banc).

8 U.S.C. § 1326 prohibits any alien from entering the United States after he has "been denied admission, excluded, deported or removed[.]" 8 U.S.C. § 1326(a). The maximum sentence is two years unless the removal was subsequent to criminal convictions. A 10 year maximum sentence applies if removal followed "commission of three or more misdemeanors involving drugs, crimes against the person, or both,

or a felony[.]" 8 U.S.C. § 1326(b)(1). A 20 year maximum sentence applies if removal followed "conviction for commission of an aggravated felony[.]" 8 U.S.C. § 1326(b)(2).

■■ In a criminal prosecution under 8 U.S.C. § 1326, "the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation." *United States v. Arrieta,* 224 F.3d 1076, 1079 (9th Cir.2000), quoting *United States v. Zarate–Martinez,* 133 F.3d 1194, 1197 (9th Cir.1998). Therefore, "the validity of the deportation may be collaterally attacked in the criminal proceeding." *Arrieta,* 224 F.3d at 1079. Such a collateral attack will only succeed where the defendant demonstrates that "(1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *Id.*

■■ However, an alien is barred from collaterally attacking an underlying deportation order "if he validly waived the right to appeal that order" during the deportation proceedings. *Arrieta,* 224 F.3d at 1079, citing *United States v. Estrada–Torres,* 179 F.3d 776, 780–81 (9th Cir.1999). "In order for the waiver to be valid, however, it must be both 'considered and intelligent.'" *Arrieta,* 224 F.3d at 1079, citing *United States v. Mendoza–Lopez,* 481 U.S. 828, 840, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987). Such a waiver is not "considered and intelligent" when "the record contains an inference that the petitioner is eligible for relief from deportation," but the Immigration Judge fails to "advise the alien of this possibility and give him the opportunity to develop the issue." *Arrieta* 224 F.3d at 1079, quoting *Moran–Enriquez v. INS,* 884 F.2d 420, 422–23 (9th Cir.1989).

Appellee asserts, and the district court agreed, that Appellant is barred from pursuing his due process claim because he did

not seek administrative review of his previous deportation orders, and therefore has not met the requirement of 8 U.S.C. § 1326(d) to exhaust administrative remedies. The district judge concluded that because Appellant waived his right to appeal at the 1995, 1996, and 1997 deportation hearings he failed to exhaust administrative remedies.

■ However, as discussed directly above, due process requires that such a waiver of appeal be "considered and intelligent." *Arrieta,* 224 F.3d at 1079. The exhaustion requirement of 8 U.S.C. § 1326(d) cannot bar collateral review of a deportation proceeding when the waiver of right to an administrative appeal did not comport with due process. *See United States v. Garza–Sanchez,* 217 F.3d 806, 808 (9th Cir.2000)(for a waiver of appeal to be valid, "such a waiver must be 'considered and intelligent.' ")(internal citations omitted); *United States v. Andrade–Partida,* 110 F.Supp.2d 1260, 1269 (N.D.Cal.2000)(holding that the exhaustion requirement of 8 U.S.C. § 1326(d) should be "waived ... because defendant was not adequately informed of his right to appeal to the BIA. Because of the IJ's error,

defendant unintelligently waived his administrative remedies.") [2]

■ INS regulations require that a person facing deportation be advised of the possibility for relief from deportation. 8 C.F.R. § 240.49(a)("The immigration judge shall inform the respondent of his or her apparent eligibility to apply for ... [a waiver of deportation] and shall afford the respondent an opportunity to make application therefor during the hearing.") [3] This Court has repeatedly held that this provision is "mandatory." *See Arrieta,* 224 F.3d at 1079; *United States v. Arce–Hernandez,* 163 F.3d 559, 563 (9th Cir. 1998). Accordingly, where the record, "fairly reviewed by an individual who is intimately familiar with the immigration laws—as IJs no doubt are—raises a reasonable possibility that the petitioner may be eligible for relief, the IJ must inform the alien of this possibility and give him the opportunity to develop the issue." *Moran–Enriquez,* 884 F.2d at 423. Immigration Judges "are not expected to be clairvoyant; the record before them must fairly raise the issue." *Id.* at 422. Failure to so inform the alien is a denial of due process that invalidates the underlying de-

2. Appellee cites to *United States v. Martinez–Vitela,* 193 F.3d 1047, 1053 n. 5 (9th Cir. 1999), for the proposition that a petitioner who admits that he is deportable and waives the right to appeal a deportation order cannot later collaterally attack the deportation proceeding. However, that case was withdrawn by the Ninth Circuit on May 25, 2000. *See United States v. Martinez–Vitela,* 213 F.3d 1205 (9th Cir.2000)("The opinion filed in this case on October 26, 1999 and appearing at 193 F.3d 1047 (9th Cir.1999) is hereby withdrawn. This case is ordered resubmitted[.]") The opinion was then reinstated as an unpublished opinion. *United States v. Martinez–Vitela,* 225 F.3d 665, 2000 WL 687698 (9th Cir.2000). Under FRAP 36–3, it is not proper to cite this Court to an unpublished opinion. Furthermore, the due process claim in *Martinez–Vitela* involved a collateral attack on a

deportation *reinstatement* proceeding, and the Court there stated only that a reinstatement proceeding cannot cure a due process defect in the underlying deportation. *See Martinez–Vitela,* 225 F.3d 665, 2000 WL 687698, *4.

3. The Appellant cites to 8 C.F.R. § 240.11(a)(2), not 8 C.F.R. § 240.49(a). The relevant language of the two provisions is nearly identical. "The immigration judge shall inform the alien of his or her apparent eligibility to apply for any of the benefits enumerated in this chapter and shall afford the alien an opportunity to make application during the hearing." 8 C.F.R. § 240.11(a)(2). However, 8 C.F.R. § 240.49(a) is contained in subpart E of section § 240, which applies to "proceedings commenced prior to April 1, 1997." Appellant's 1997 deportation hearing occurred on January 3, 1997.

portation proceeding. *See Arrieta,* 224 F.3d at 1079.

Section 212(h) of the Immigration and Naturalization Act, codified at 8 U.S.C. § 1182(h), provides one available avenue of relief from deportation. This provision allows the Attorney General to waive deportation

> in the case of an immigrant who is the spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien.

8 U.S.C. § 1182(h)(1)(B). Therefore, when the record before the Immigration Judge "raises a reasonable possibility" of relief from deportation under this provision, it is a denial of due process to fail to inform an alien of that possibility at the deportation hearing. *See Arrieta,* 224 F.3d at 1079.

The government argues that this provision was not an available avenue of relief from deportation at the time of Appellant's 1997 deportation. It asserts that "[section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)] was the controlling authority. Section 440(d) divested the Attorney General of the discretion to relieve from deportation those persons who had previously been convicted of aggravated felonies." However, AEDPA Section 440(d) did not divest the Attorney General of discretion to grant relief from deportation under 8 U.S.C. § 1182(h). AEDPA section 440(d), Pub.L. 104–132, 110 Stat. 1277 (Apr. 24, 1996), modified 8 U.S.C. § 1182(c). That subsection provided discretionary relief from deportation for "[a]liens lawfully admitted for permanent resident [sic] who temporarily proceeded abroad voluntarily and not under an order

of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years[.]" This was not Appellant's situation, and he claims a right to relief under 8 U.S.C. § 1182(h), not § 1182(c). AEDPA section 440(d) did not in any way modify 8 U.S.C. § 1182(h). Therefore, appellee's argument that 8 U.S.C. § 1182(h) was not an available avenue of relief during Appellant's 1997 deportation is inapposite.

**B.  Showing prejudice.**

■  When a petitioner moves to dismiss an indictment under 8 U.S.C. § 1326 based on a due process violation in the underlying deportation proceeding, he must show prejudice resulting from the due process violation. To establish prejudice, petitioner "does not have to show that he actually would have been granted relief. Instead, he must only show that he had a 'plausible' ground for relief from deportation." *Arrieta,* 224 F.3d at 1079, citing *Arce–Hernandez,* 163 F.3d at 563; *United States v. Jimenez–Marmolejo,* 104 F.3d 1083, 1086 (9th Cir.1996).

In the case of possible relief under 8 U.S.C. § 1182(h), Appellant must make a showing that his deportation would impose an "extreme hardship" on the citizen or lawful resident family members. *Arrieta,* 224 F.3d at 1180. The Ninth Circuit has held that a showing of "extreme hardship" requires " 'great actual or prospective injury' or 'extreme impact' on the citizen family member, beyond the 'common results of deportation.' " *Arce–Hernandez,* 163 F.3d at 564, citing *Shooshtary v. INS,* 39 F.3d 1049, 1051 (9th Cir.1994). "The difficulties in having to move one's family elsewhere and anticipated difficulties in finding work have been held to constitute the common results of deportation[,]" and therefore *do* not constitute extreme hardship. *Id.*

## ANALYSIS

Appellant argues that his due process rights were violated during his deportation proceedings because he was never notified that he might be eligible for relief from deportation under 8 U.S.C. § 212(h), where the record before the various immigration judges raised an inference that he was entitled to that relief. *See* 8 C.F.R. § 240.49(a); *see also Arrieta,* 224 F.3d at 1079; *Moran–Enriquez,* 884 F.2d at 422–23.

However, even assuming that Appellant has demonstrated a due process violation here, he has failed to satisfy the second requirement for the collateral relief he seeks, that being "prejudice as a result of the [due process] defects." *Arrieta,* 224 F.3d at 1079. To demonstrate prejudice, Appellant must show that there was a " 'plausible' ground for relief from deportation" if he had sought such relief at the time of his underlying deportation proceedings. *Id.,* citing *Arce–Hernandez,* 163 F.3d at 563. As noted above, to establish a ground for relief under 8 U.S.C. § 212(h), Appellant would ultimately have to demonstrate that deportation would cause an "extreme hardship" on citizen family members.

The district court relied on *Arce–Hernandez* in finding that Appellant has not shown that there was a plausible ground for relief in this case. In *Arce–Hernandez,* petitioner demonstrated that deportation would require him to move his citizen wife and children to Mexico or leave them behind in the United States to face "economic hardship." *Arce–Hernandez,* 163 F.3d at 563–64. Petitioner asserted that his wife was in ill health and that she would have difficulty finding work if she moved to Mexico. *Id.* at 564. Under these circumstances, the court found that there was no extreme hardship, stating that "Arce–Hernandez describes the typical case of hardship that follows deportation of an alien whose citizen wife and children were all acquired after his illegal entry into the United States." *Id.,* citing *INS v. Wang,* 450 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981).

Here, the only evidence submitted to show hardship is a brief, generalized declaration from Appellant's wife, who states that she needs his "help in raising children and providing for them. I cannot provide everything they need without their father's help." However, the record discloses that Appellant has been incarcerated for 10 of the last 13 years. Appellant also submits the declaration of an attorney who opines that there is a "reasonable possibility" that Appellant might have obtained a waiver from deportation under 8 U.S.C. § 212(h) if one had been sought.

■ The hardships alleged by Appellant represent the "common results of deportation[,]" *Arce–Hernandez,* 163 F.3d at 564, and do not represent the type of additional evidence of extreme hardship beyond the normal deprivation of family support. *Cf. Arrieta,* 224 F.3d at 1081–82. As in *Arce–Hernandez,* Muro–Inclan has demonstrated only those hardships that inevitably result from the deportation of a non-citizen relative who has acquired a citizen family. His family may well suffer hardships as a result of his deportation, "but we cannot say, as a matter of law, that these hardships would be extreme and beyond the common results of the deportation of a convict." *Arce–Hernandez,* 163 F.3d at 564. Like Arce–Hernandez, then, Muro–Inclan "has failed to tender a plausible case that he is eligible for a waiver under 212(h)." *Id.*

In *Arrieta,* we found a plausible ground for 212(h) relief existed and therefore reversed. There, however, the defendant had thoroughly documented the many ways in which his support and presence in

the United States were valuable to various family members in non-economic terms:

> He provided an affidavit from his mother documenting the critical role Mr. Arrieta played in raising his younger siblings. Mr. Arrieta's mother was in very poor health, and she was raising two citizen children. His mother documented the essential assistance Mr. Arrieta provided in helping to raise those children, especially when she was medically unable to do so. She also documented the severe sense of personal loss she felt when Mr. Arrieta was deported.... The record also showed that Mr. Arrieta's hardship would cause serious non-economic hardships to the family, in addition to the "typical" financial hardship found in *Arce-Hernandez* .... [I]n this case Mr. Arrieta has documented that his deportation would deprive his family of various forms of non-economic familial support and that it would disrupt family unity.

*Arrieta*, 224 F.3d at 1082.

█ In contrast to Arrieta's well-documented proof of hardship, here we are presented only with the conclusory opinion of the immigration lawyer and the very brief, nonspecific declaration from Appellant's wife—the substance of which is belied by the Appellant's prolonged absences from his family while he was imprisoned. Unlike Arrieta, Muro-Inclan has not provided that "something more" required by *Arce-Hernandez* to "remove [his] case from the 'typical' hardship category." *Id.* On this record, then, Appellant has not shown anything beyond the common results of deportation. A finding of plausibility on this showing would require a finding of plausibility, and therefore prejudice, in almost every case.[4]

We also find that Appellant's *Apprendi* argument is without merit. *See United States v. Pacheco-Zepeda*, 234 F.3d 411 (9th Cir.2000).

AFFIRMED.

TASHIMA, Circuit Judge, dissenting:

I respectfully dissent from the majority's holding that, despite the violation of Juan Manuel Muro-Inclan's ("Muro") due process rights in five underlying deportation proceedings, his conviction under 8 U.S.C. § 1326 must be affirmed because he has failed to demonstrate prejudice. The majority has misconstrued our case law as to what showing is required to demonstrate prejudice.

Muro arrived in the United States as an infant in 1965; grew up here with his parents, who are lawful permanent residents; married a U.S. citizen in 1984 at the age of 20; and has three children, all of whom were born in this country. His due process rights were repeatedly violated because the record from his various deportation proceedings clearly raised the inference that he was eligible for a waiver under 8 U.S.C. § 212(h), but he was never so advised. In order to demonstrate prejudice from these due process violations, Muro need not establish that he would actually have been granted a § 212(h) waiver; rather, "he must only show that he had a 'plausible' ground for relief from deportation." *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir.2000). The evidence in the record certainly is sufficient to satisfy this minimal threshold.

To show that he had a plausible ground for relief, Muro submitted the declaration of his wife, Linda Muro, who stated:

> It is important that our children have a father. They love their father and need

---

4. The attorney's expert opinion, although entitled to some weight, is not independently sufficient to overcome the otherwise insufficient showing of plausible extreme hardship. *Cf. Arrieta*, 224 F.3d at 1083.

him in their lives. I also need help in raising the children and providing for them. I can not provide everything they need without their father's help. It is a significant hardship on the family not to have Juan in the country to help with the children.

Linda Muro thus indicates that the children's love for their father and her need for his help in "raising" them-in addition to his help in "providing" for them-contribute to the significant hardship that would result from Muro's deportation. This evidence thus goes beyond the simple matter of the hardship posed by deportation of a family's primary bread-winner. *See Gutierrez–Centeno v. INS*, 99 F.3d 1529, 1533 (9th Cir.1996) (family separation is a factor "which warrants considerable, if not predominant, weight"); *Contreras–Buenfil v. INS*, 712 F.2d 401, 403 (9th Cir.1983) ("We have held that '[t]he most important single [hardship] factor may be the separation of the alien from family living in the United States.'" (citation omitted and alterations in original)).

Thus, the majority's reliance on *United States v. Arce–Hernandez*, 163 F.3d 559 (9th Cir.1998), in concluding that this evidence is insufficient to show plausibility is misplaced. "*Arce–Hernandez* simply stands for the proposition that economic hardship caused by deportation of the family's primary bread winner, combined with relocating, do not, standing alone, constitute the extreme hardship necessary to justify relief." *Arrieta*, 224 F.3d at 1082.[1]

Muro also submitted the declaration of Matthew Millen, an immigration law expert with 24 years' experience in the field. After reviewing Muro's immigration file, hearing transcripts, attorney notes, crimi-

nal history, and wife's declaration, Millen gave his expert opinion that there is a "reasonable possibility" that Muro would have been granted a § 212(h) waiver. The sufficiency of this showing of prejudice is directly supported by our case law. *See Arrieta*, 224 F.3d at 1083 (stating that a showing of prejudice is made by "testimony from an expert witness, ... that there was 'a reasonable possibility'" that a petitioner would have been granted a waiver if one had been sought).

In concluding that this showing is insufficient, the majority misreads *Arrieta*. It asserts that "[u]nlike Arrieta, Muro–Inclan has not provided that 'something more' required by *Arce–Hernandez* to 'remove [his] case from the "typical" hardship category.'" Maj. op. at 1186. But *Arrieta* expressly holds that credible expert testimony, such as that given here, "provides additional support for the proposition that it would be 'plausible' that Mr. Arrieta would have received a § 212(h) waiver. Because it is plausible that Mr. Arrieta would have received a waiver, we hold that he was prejudiced by the government's due process violation." *Arrieta*, 224 F.3d at 1083. And such a showing of "plausibility" or a "reasonable possibility" that such a showing of extreme hardship can be made is all that is required. *See id.; United States v. Jimenez–Marmolejo*, 104 F.3d 1083, 1086 (9th Cir.1996).

Because I conclude that Muro has made a plausible showing of available relief under § 212(h), as required by our case law, I would reverse his conviction.

1. In addition, we have also considered it significant that "deportation will ... not only sever close family ties, but return [the petitioner] to a country in which she has no real ties. This is not the type of hardship experienced by most aliens who have spent time abroad." *Gutierrez–Centeno*, 99 F.3d at 1533 (citation and internal quotation marks omitted). Muro has spent his entire life in this country after arriving here as an infant.