**UNITED STATES OF AMERICA, Plaintiff**
**v.**
**TREVOR DORSETT, Defendant**

Crim. No. 2002-191

District Court for the Virgin Islands

Division of St. Thomas and St. John

November 4, 2003

NELSON JONES, AUSA, St. Thomas, U.S.V.I., *for the Plaintiff*

DOUGLAS BEEVERS, AFPD, U.S.V.I., *for the Defendant*

MOORE, *Judge*

## MEMORANDUM

(November 4, 2003)

This matter is before the court on the defendant's motion to suppress all evidence that he was deported on the ground that *in absentia* deportation proceedings violated his due process rights. Because I agree that the defendant's due process rights were violated by the *in absentia* deportation proceedings and that the defendant has established a valid collateral attack on those proceedings under 8 U.S.C. § 1326(d), I grant the defendant's motion to suppress.

## FACTUAL AND PROCEDURAL BACKGROUND

Dorsett was indicted for re-entering the United States on December 8, 2002, after having been deported on or about January 13, 2002. The facts surrounding Dorsett's deportation proceedings are voluminous, complex, and tell the story of unresponsive lawyers and an inattentive bureaucracy that failed to give the defendant's immigration case the due process and attention it deserved. Because these facts form the basis of Dorsett's appeal, I review them at length.[1]

Dorsett was born in St. Kitts and moved to the United States with his parents as a young child.[2] His parents became naturalized United States

---

[1] The factual record described in this Memorandum is derived from a hearing on the defendant's motion to suppress held before this Court on October 1, 2003, and from exhibits submitted by both parties.

[2] It is not clear when Dorsett actually immigrated. At the suppression hearing, an INS official testified that Dorsett's INS records show that he immigrated on April 24, 1973. Dorsett's Supplemental Memorandum on § 212C eligibility, however, states that he immigrated in 1966 as an eight-year old child.

citizens when Dorsett was seventeen years old. Dorsett never went through the naturalization process[3] and, therefore, lived most of his childhood and all of his adult life as a resident alien in the United States. All of Dorsett's immediate family members, including his wife and four children, are United States citizens.

Dorsett was convicted of armed bank robbery in Santa Fe, New Mexico, on August 7, 1991, and sentenced to four years and nine months in prison followed by a term of supervised release.[4] In April of 1995, Dorsett was released from federal prison in Fort Dix, New Jersey, into the custody of the Immigration and Naturalization Service ["INS"] which promptly transported him to an INS facility in Louisiana.[5] On April 14, 1995, R. Travis Douglas, Esquire ["Douglas"], an attorney admitted to practice in Arkansas, filed a notice of entry of appearance with the INS.

On June 9, 1995, Douglas filed a motion to change venue to Virginia with an immigration judge in Oakdale, Louisiana. This motion gave Charmaine Grant's address as Dorsett's address for purpose of service of process. According to Dorsett's testimony at the suppression hearing, Douglas assisted him in gaining release on an INS bond about a month after he arrived at the INS facility in Louisiana. The INS transferred venue from Louisiana to Albany, New York, rather than Virginia, probably because Dorsett's brother, who posted bond, lived in Albany at the time.

Upon being released from INS custody in Louisiana, Dorsett moved to Lorton, Virginia, to live with his sister, Charmaine Grant. As required by the conditions of his supervised release, Dorsett reported to the probation office in Alexandria after arriving in Virginia.[6]

---

[3] At the time Dorsett's parents were naturalized, the age for derivative citizenship was sixteen, and when the age was raised to eighteen in 1978, Dorsett was already nineteen. See 8 U.S.C. § 1431-1432.

[4] The record does not specify the term of the defendant's supervised release, although Dorsett's testimony at the suppression hearing indicated it was at least two and a half years.

[5] According to Dorsett's testimony, he did not begin his supervised release upon arriving at the INS facility. As discussed below, his supervised release began after he was released from the INS facility.

[6] According to Dorsett's testimony, the conditions of his supervised release required him to report to a probation officer within seventy-two hours of being released. Dorsett understood this to require him to report within seventy-two hours of being released from INS custody.

Dorsett testified that he received mail while living at his sister's apartment. In August, 1995, he rented his own apartment in Alexandria, Virginia, and moved out of his sister's apartment. Dorsett testified at the hearing that he informed his probation officer of his change in address and that he filled out a change-of-address form with the postal service. Although he did not inform the INS of his new address, Dorsett testified that his probation officer told him that he was in contact with the INS about his case.

In May, 1996, apparently with the help of his family members, Dorsett hired a Maryland-based attorney named Eric Bowman, Esquire ["Bowman"], to handle his pending immigration case before the United Mates Department of Justice, Executive Office For Immigration Review Immigration Court ["Immigration Court"]. On June 6, 1996, Douglas filed a motion to change venue and withdraw as counsel with an immigration judge in New York City.[7] As with the motion Douglas filed with the Immigration Court in Louisiana a year earlier, this motion requested transfer of venue to Arlington, Virginia, and gave Charmaine Grant's address as Dorsett's address for purpose of service of process. .

Attached to Douglas's motion was Bowman's notice of appearance to take over Dorsett's representation. On June 13, 1996, the New York based immigration judge granted the motion to change venue to Virginia, but did not grant Douglas's motion to withdraw as counsel and erroneously stated that the "Alien's new attorney/representative (if any) is R. Travis Douglas, Esq." The order listing Douglas as the "new" attorney of record was then mailed to Douglas's office in Arkansas. The record does not reflect that Douglas contacted the INS or Dorsett to let them know that the immigration judge had erroneously retained Douglas's name as counsel of record.

On July 3, 1996, approximately one week after the order erroneously listing Douglas as the new attorney of record was sent to Douglas's Arkansas address, the immigration court sent Douglas a notice of a hearing date of August 9, 1996. The INS did not send a copy of the notice to Dorsett's residential address of record, namely, his sister's apartment in Lorton, Virginia. Again, there is no evidence that Douglas

---

[7] It is not clear from the record why this motion was filed in New York City because venue over the INS matter was transferred to Albany, New York, after the defendant was released from the INS facility in Louisiana.

notified either the INS or the defendant that he was continuing to receive notices from the INS in error. Also, according to the defendant, Douglas did not notify him of the August 9, 1995, hearing date. On that date, the Immigration Court held a hearing on Dorsett's case that was not attended by Dorsett or either of his attorneys, and the immigration judge acknowledged that "it is not clear whether the alien's attorney Travis Douglas, who practices out of Fort Smith, Arkansas, is still the respondent's counsel." Because of the confusion, the judge continued the hearing until September 13, 1995, and sent notice of the new hearing date to Dorsett at his sister's apartment via certified mail. If Dorsett's sister received the notice at her apartment, she did not forward it to Dorsett or inform him that she had received the notice. On September 13, 1995, the immigration judge proceeded with the hearing in Dorsett's absence, heard evidence from the INS, and ordered that Dorsett be deported.[8]

According to Dorsett's testimony at the suppression hearing, he did not learn of the September 13, 1996 deportation hearing until the end of September when he was visiting family members in St. Thomas. Even when he found out about the deportation order, Dorsett made no effort to contact the INS, Douglas, or Bowman.

On October 15, 1995, Douglas filed an appeal of the Immigration court's *in absentia* deportation order with the Board of Immigration Appeals ["BIA"]. Douglas's appeal stated that he had not personally notified the defendant of the hearing and that the defendant never received notice of the hearing directly from the Immigration court.

In April or May of 1997, as the appeal filed by Douglas was pending with the BIA, Dorsett was arrested in the United States Virgin Islands by U.S. Marshals for violation of his supervised release conditions.[9] He was sent back to Virginia where, according to Dorsett's testimony, a district

---

[8] It is not clear from the record if Douglas also received notice of this new hearing date. At the September 13, 1996 hearing, the immigration judge stated that notice of the hearing had been sent to both Douglas and Dorsett and that both had acknowledged receipt of the notice. In his supplemental motion to suppress deportation, Dorsett claims that "the immigration judge continued the hearing and ordered notice sent *only* to Dorsett's Virginia address" (emphasis added).

[9] Dorsett had not received permission to travel to the Virgin Islands in August, 1996. Also, once he arrived in the Virgin Islands, he did not continue to maintain contact with his probation officer on the 1991 conviction.

judge in Alexandria, Virginia, excused the remaining few months of his supervised release for his 1991 conviction and he was released to the INS.

On October 22, 1997, the BIA held that the appeal filed on October 15, 1996, by Douglas was improper. The BIA stated that, under 8 U.S.C. § 1252, a motion to reopen should have been filed with the immigration judge assigned to the case instead of an appeal to the BIA. Accordingly, the BIA ordered the record returned to the Immigration Court.

It was not until July 21, 1998, that Attorney Bowman filed a motion with the Immigration Court requesting that the Court rule on the previously filed motion to reopen deportation proceedings and stay deportation. In this motion, Bowman argued that the BIA's October 22, 1997, return of the appeal to the Immigration Court constituted the filing of a motion to reopen with the Immigration Court. Bowman's July 21, 1998, motion was originally titled "Motion Requesting the Court to Decide the Previously Filed Motion To Reopen Deportation Proceedings, And Stay Deportation and Release on Previously Paid Bond." When Bowman attempted to file this motion with the immigration court clerk's office, however, he was informed that there was no previously filed motion to reopen, and that his motion would have to be filed as the first motion. Bowman then apparently told the clerk that on October 22, 1997, the BIA ordered an appeal returned to the Immigration Court for consideration as a motion to reopen, therefore there should have been a previously filed motion on record. The clerk again instructed Bowman that there was no such motion on record and that he would have to strike out the heading of his current motion and title it simply as a motion to reopen.

Bowman followed the clerk's instructions and the clerk's office should have recorded the first motion to reopen as having been filed on July 21, 1998.

On October 28, 1998, a deportation officer assigned to the case notified Bowman that the Immigration Court said it never received the July 21, 1998 motion to reopen. On October 29, 1998, Bowman filed a second motion to reopen with the Immigration Court that explained his discussion with the Clerk's office on July 2, 1999. Bowman attached a copy of the motion filed on July 21, 1998, with the October 29, 1998 motion. On November 18, 1998, however, the Immigration Court returned Bowman's October 29, 1998, motion to reopen with a notice that it had been rejected because Bowman failed to pay the filing fee.

Bowman never resubmitted the motion with the required fee and, therefore, the motion to reopen was never considered. Neither Dorsett nor his family members ever heard from Bowman again. Dorsett was deported on January 13, 2000.

On December 8, 2002, Dorsett allegedly traveled to the United States Virgin Islands on a ferry from Tortola, British Virgin Islands and was apprehended by INS officials upon arriving at the E.W. Blyden Seaport on the St. Thomas waterfront. On December 9, 2002, the United States Attorney charged Dorsett with re-entry into the United States after deportation, in violation of 18 U.S.C. § 1326. Dorsett has filed a motion to suppress all evidence that he was deported on the ground that his due process rights were violated by the *in absentia* deportation hearing on September 13, 1996.

## II. ANALYSIS

Federal immigration law forbids any alien who has been deported from re-entering the United States without prior approval from the Attorney General. 8 U.S.C. § 1326(a). Among the elements of a *prima facie* case in an illegal reentry prosecution, the government bears the burden of proving beyond a reasonable doubt that the defendant was deported. Although the government need not show that the deportation was lawful, the defendant in a subsequent criminal prosecution may collaterally attack the underlying deportation if he was denied meaningful judicial review of the administrative proceedings. *See United States v. Mendoza-Lopez*, 481 U.S. 828 (1987). The Supreme Court, in *Mendoza-Lopez*, ruled that a defendant charged with re-entry after deportation in violation of 8 U.S.C. § 1326 could challenge the validity of the underlying deportation order in the criminal proceeding. *Id.* at 838-39. The Court held that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding." *Id.* at 837-38 (emphasis in original). Accordingly, the court found that

> [d]epriving an alien of the right to have the disposition in a deportation hearing reviewed in a judicial forum requires, at a minimum, that review be made available in any subsequent

proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense.

*Id.* at 839.

In light of *Mendoza-Lopez*, Congress amended section 1326 to provide that a defendant in a criminal proceeding may collaterally attack the validity of the deportation order if the alien demonstrates that (1) he exhausted any administrative remedies that may have been available to seek relief against the order, (2) the deportation proceedings at which the order was issued improperly deprived him of the opportunity for judicial review, and (3) the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d)(1)-(3). Relying on section 1326(d), Dorsett argues that his due process right to meaningful judicial review was violated by the *in absentia* deportation hearing.

## A. Dorset Exhausted His Administrative Remedies

Dorsett's first step in challenging the admissibility of his deportation order is to establish that he exhausted "any administrative remedies that may have been available to seek relief against the order." 8 U.S.C. § 1326(d)(1). The government argues that Dorsett is time barred from collaterally attacking his deportation proceeding because he failed to exhaust these administrative remedies. This exhaustion requirement, however, "cannot bar collateral review of a deportation proceeding when the waiver of right to an administrative appeal did not comport with due process." *United States v. Muro-Inclan*, 249 F.3d 1180, 1183 (9th Cir. 2001); *see also United States v. Aguirre-Tello*, 342 F.3d 1181 (10th Cir. 2003).

In *Muro-Inclan*, the appellant collaterally challenged his deportation hearing in district court, arguing that his due process rights were violated because he had never been informed of his possible eligibility for a waiver of deportation. The Court of Appeals reversed the district court's ruling that the appellant was time barred from pursuing his due process claim for failure to exhaust administrative remedies under section 1326(d). The failure to inform the appellant of his eligibility for a waiver constituted a denial of due process which not only excused the appellant from having to show exhaustion of administrative remedies under section 1326(d), but also invalidated the underlying deportation proceeding. *Muro-Inclan*, 249 F.3d at 1181-84. Similarly, in *Aguirre-Tello*, the Tenth

Circuit Court of Appeals allowed the appellee to collaterally attack a prior deportation on due process grounds despite his failure to exhaust administrative remedies. 324 F.3d at 1189. In reaching this holding, the *Aguirre-Tello* Court noted that the deprivation of the appellee's due process rights "deprive[d] him of his right to any appeal, whether administrative or judicial, and that a deprivation resting on such a ground cannot bar his collateral attack in this proceeding." *Id.*

■ Due process requires that an alien be provided notice of the charges against him, a hearing before an executive or administrative tribunal, and a fair opportunity to be heard. *Kwong Hai Chew v. Colding*, 344 U.S. 590, 597-98 (1953). Regarding notice, due process requires that it be given "in a manner reasonably calculated to ensure that notice reaches the alien." *See, e.g., Annin v. Reno*, 188 F.3d 1273, 1277 (1999). It is true that an alien has the responsibility to keep his current address on file with the INS. Under ordinary circumstances, it would be reasonable and sufficient for the INS to serve notice at an alien's address of record even if the alien no longer resides there. *See United States v. Hinojosa-Perez*, 206 F.3d 832, 837 (9th Cir. 2000); *United States v. Estrada-Trochez*, 66 F.3d 733, 736 (5th Cir. 1995). Again, under ordinary circumstances, the combination of sending notice to the alien directly at his last known address and to his attorney of record would be reasonable and satisfy due process. As is manifest from the factual and procedural recitation above, these were not the ordinary circumstances where such notice was adequate or reasonable.

The Immigration Court's clerical error resulted in notice improperly being provided to Dorsett's Arkansas-based attorney rather than his new, Maryland-based local counsel. Dorsett had every reason to believe that the INS would deal directly with his new counsel (or with any counsel for that matter), rather than directly with him. *See* FED. R. CIV. P. 5(b) ("service ... on a party represented by an attorney is made on the attorney unless the court orders service on the party"). When the Immigration Court's errors are compounded by the mistakes and incompetence of his attorneys, Dorsett's due process rights were clearly violated. Douglas, the defendant's Arkansas-based attorney, could have easily corrected the error by informing the INS, Dorsett's local attorney, or Dorsett of the mistake. As discussed more below, Douglas's actions, when combined with the mistakes of the defendant's second attorney, prevented the

defendant from presenting his strong argument for waiver of deportation under 8 U.S.C. § 1182(c).

█ In the extraordinary circumstances present in Dorsett's case, I find that the defendant's due process rights were infringed by the combined effect of the Immigration Court's clerical errors and the mistakes of his attorneys. Accordingly, I find that this comedy of errors denied the defendant due process. It follows from *Aguirre-Tello* and *Muro-Inclan* that this violation of due process vitiates section 1326(d)'s exhaustion requirement and the defendant is not barred from collaterally attacking his deportation hearing.

## B. The Deportation Proceedings Improperly Deprived Dorsett of the Opportunity For Judicial Review

Next, section 1326(d) requires that a showing that the deportation proceedings improperly deprived him of the opportunity for judicial review. I find that the Immigration Court's clerical error denied the defendant the opportunity of meaningful judicial review. If the Immigration Court had not made such an error, Eric Bowman, the defendant's new, locally-based attorney, would have received notice of the proceedings and would have had the opportunity to request a waiver of his client's deportation under 8 U.S.C. § 1182(c). Based on the record before me, the defendant would have been able to present a strong case for such a waiver. The defendant has solid family ties to the United States; all of his family members, including his wife and three children, live in the United States and are United States citizens. Dorsett came to the United States as a young child, has lived here for his entire life since immigrating, and has very little, if any, connection to his birthplace. From all these factors, I find that there was "a reasonable likelihood that but for the errors complained of [the defendant] would not have been deported." *United States v. Fellows*, 50 Fed. Appx. 82, 85 (3d Cir. 2002) (quoting *United States v. Lopez-Vasquez*, 227 F.3d 476, 485(5th Cir. 2000)

Again, the Immigration Court's failure to provide the defendant with meaningful judicial review could have been cured by, but instead was compounded by, the failure of both of the defendant's lawyers to properly file a simple motion to reopen. Douglas, the defendant's initial, Arkansas-based attorney, incompetently challenged the Immigration Court's *in absentia* decision to deport the defendant by filing an appeal with the BIA rather than filing a notion to reopen with the Immigration

Court. Then Bowman, the defendant's Maryland-based attorney, added his own ineffectiveness on top of Douglas's mistakes. Bowman took a big risk by assuming that the Immigration Court would treat the BIA's rejection of Douglas's appeal as a motion to reopen. After Bowman and the Immigration Court finally worked out the confusion and he submitted it as a motion to reopen, Bowman inexcusably failed to include the filing fee. When the court refused to consider Bowman's motion to reopen for failure to pay the filing fee and sent it back to him, Bowman did not pay the fee, took no action, and dropped his haphazard assistance of the defendant.

Dorsett argues that these mistakes amounted to ineffective assistance of counsel.[10] As there is no independent Sixth Amendment right to counsel in immigration proceedings, any claim of ineffective assistance of counsel Dorsett raises here can only be considered to the extent it impinges on his due process rights under the Fifth Amendment. *See Xu Yong Lu v. Ashcroft*, 259 F.3d 127, 131 (3d Cir. 2001). To determine whether an individual's due process rights have been infringed by ineffective assistance of counsel, courts generally examine whether the lawyer's errors rendered the proceeding fundamentally unfair or prevented the individual from reasonably presenting his case. *See, e.g, Hernandez v. Reno*, 238 F.3d 50, 55 (1st Cir. 2001) ("incompetence in some situations may make the proceeding fundamentally unfair and give rise to a Fifth Amendment due process objection"); *Castaneda-Suarez v. INS*, 993 F.2d 142, 144 (7th Cir. 1993) ("[C]ounsel at a deportation hearing may be so ineffective as to have impinged upon the fundamental fairness of the hearing in violation of the fifth amendment due process clause."); *Lozada v. INS*, 857 F.2d 10, 13-14 (1st Cir. 1988) (ineffective assistance

---

[10] Usually, an alien facing deportation due in part to his lawyers' ineffective assistance must file a motion with the BIA and follow certain prescribed procedures. *See Lea v. Ashcroft*, 259 F.3d 127, 132-33 (3d Cir. 2001) (*citing In re Lozada,* 19 I. & N. Dec. 637, 639 (BIA 1988)). In this case, however, it would be absurd to find that Dorsett *did not exhaust administrative remedies or pursue every available of* avenue of judicial review by not filing an ineffective assistance claim with the BIA. The record reflects that the defendant did not learn of his lawyers' errors until after he was deported, had reentered the country, was arrested on these charges, and his present lawyer investigated the case. Dorsett has properly and timely raised the ineffective assistance of his immigration counsel at the first opportunity in this collateral attack.

of counsel could constitute a denial of due process if "the alien was prevented from reasonably presenting his case").

■ There is no doubt in my mind, and I so find, that the incompetence and errors committed by both of the defendant's lawyers in this case were severe enough to render his deportation fundamentally unfair. They clearly prevented the defendant from presenting his case, as developed in the next section. Consequently, I find that his attorneys' ineffective assistance prevented the defendant from curing the previous mistakes of the Immigration Court and, therefore, the defendant was denied adequate judicial review.

## C. The Entry of the Deportation Order was Fundamentally Unfair

Finally, Dorsett must show that his deportation proceedings were fundamentally unfair and that he was prejudiced by this unfairness. Neither section 1326(d), nor *Mendoza-Lopez* specify what constitutes a "fundamentally unfair" deportation order. *See Mendoza-Lopez*, 481 U.S. at 839 n.17 (declining to enumerate "what procedural errors are so fundamental that they functionally deprive the alien of judicial review").

■ While the Immigration Court's clerical errors alone may not be sufficient to satisfy this "fundamental unfairness" requirement, the Immigration Court's clerical errors combined with the ineffective assistance of Dorsett's attorneys more than satisfy this requirement. *See, e.g., United States v. Perez*, 330 F.3d 97, 104 (holding that alien demonstrated deportation proceedings were fundamentally unfair when alien was deprived [of] effective assistance of counsel). These clerical errors and incompetent representation rendered Dorsett's deportation order fundamentally unfair because competent counsel would have presented his solid case for waiver under section 212(c). The inability and failure of Dorsett's lawyers to complete simple procedural tasks, such as not notifying INS of the Immigration Court's clerical error, not properly requesting that the Immigration Court reopen the file instead of appealing the case to the BIA, and not paying a filing fee, deprived the defendant of the substantial likelihood that he would have been able to establish the grounds for a successful waiver of his deportation. Accordingly, I conclude that the deportation proceedings were fundamentally unfair and that the defendant was prejudiced by this unfairness.

## III. CONCLUSION

■ For the reasons stated above, the defendant has successfully challenged the validity of his deportation order under 8 U.S.C. § 1326(d). Accordingly, I hold that the prior deportation proceedings seriously infringed the defendant's due process rights and I will grant his motion to suppress the deportation order. An appropriate order follows.