**Frebert BONHOMETRE,**

v.

**John ASHCROFT, et al.**

**No. Civ.A. 03–3689.**

United States District Court, E.D. Pennsylvania.

Feb. 20, 2004.

---

James M. Tyler, Schubert Bellwoar, Philadelphia, PA, for Petitioner.

Sonya Fair Lawrence, United States Attorney's Office, Department of Justice, Philadelphia, PA, for Respondents.

## MEMORANDUM

DALZELL, District Judge.

After learning that he had been convicted of armed robbery, the Immigration and Naturalization Service ("INS") began removal proceedings against Frebert Bonhometre, a Haitian citizen and alien lawfully

admitted for temporary residence. An Immigration Judge ("IJ") found Bonhometre removable, but the IJ did not advise Bonhometre that he could apply for relief from the removal order. Bonhometre here challenges that failure to advise as a denial of his Fifth Amendment due process rights.

*Factual Background*

Frebert Bonhometre is a citizen of Haiti, but he has resided in the United States since the early 1980s. Am. Pet. ¶ 8. His common-law wife is a United States citizen, and he has three children who are United States citizens. Am. Pet. ¶ 23. On September 15, 1989, Bonhometre obtained the status of an alien lawfully admitted for temporary residence. Defs.' Mem. Opp'n Pet. ("Def.Mem.") at 10–11 & n. 3, Ex. 1.[1]

In December of 1994, Bonhometre was involved in an incident that ultimately resulted in his pleading guilty to armed robbery,[2] assault and battery,[3] and assault by means of a dangerous weapon[4] in a Massachusetts state court. *See* Am. Pet. ¶ 9; Def. Mem. Ex. 2. Bonhometre received a sentence of not more than three years imprisonment, and he served two years before he was released to INS custody in July, 1997. Def. Mem. Ex. 2; Pet. ¶ 11; Am. Pet. ¶ 9. About the time of his release, the INS notified Bonhometre that it would commence removal proceedings against him because he had been convicted of an aggravated felony.[5] *See* Def. Mem. Ex. 1.

A removal hearing convened on August 18, 1997, but the IJ continued the hearing for one month so that Bonhometre, who

1. Section 245A of the Immigration and Naturalization Act (the "Act") directs the Attorney General to adjust an alien's status to that of an alien lawfully admitted for temporary residence if the alien meets certain eligibility criteria and submits a timely application. *See* 8 U.S.C. § 1255a(a) (2004). Eighteen months after receiving the status of an alien lawfully admitted for temporary residence, the alien may apply for a second adjustment of status and become, if eligible, an alien lawfully admitted for permanent residence. *See* 8 U.S.C. § 1255a(b)(1) (2004). For the sake of brevity, we will use "lawful temporary resident" to refer to "an alien lawfully admitted for temporary residence" and "lawful permanent resident" to signify "an alien lawfully admitted for permanent residence."

We attribute any apparent differences in the parties' characterizations of Bonhometre's status to the inelegance of the statutory language. Although Bonhometre states that he is a "lawful permanent resident," *see* Am. Pet. ¶ 5, he offers no evidentiary support for his bald assertion. Defendants, on the other hand, have submitted evidence that Bonhometre was a *"temporary* Lawful Permanent Residen[t] ... in accordance with Section 245(a)." *See* Def. Mem. Ex. 1 (emphasis added). At first, Exhibit 1 appears ambiguous because Section 245(a) establishes one method of obtaining lawful permanent resident status and does not address lawful temporary

resident status in any way. Because Section 245A(a) does deal with lawful temporary resident status, we interpret the reference in Exhibit 1 to "Section 245(a)" as a typographical error that should have cited "Section 245A(a)." Exhibit 1, ambiguous though it may be, is the only record evidence of Bonhometre's status, and it establishes that he was a lawful temporary resident.

Defendants agree that Bonhometre was a lawful temporary resident, *see* Def. Mem. at 10–11 & n. 3, and we suspect that Bonhometre will not quibble with our analysis, given the result we reach below.

2. *See* Mass. Gen. Laws ch. 265, § 17 (2004).

3. *See* Mass. Gen. Laws ch. 265, § 13A (2004).

4. *See* Mass. Gen. Laws ch. 265, § 15B (2004).

5. Section 237(a)(2)(A)(iii) of the Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (2004), subjects any alien who is convicted of an aggravated felony to removal. Section 101(a)(43)(F), 8 U.S.C. § 1101(a)(43)(F) (2004), defines an "aggravated felony" to include "a crime of violence ... for which the term of imprisonment [is] at least one year." Bonhometre has never suggested that the crimes to which he pled guilty are not aggravated felonies, the commission of which subjected him to removal.

was not represented by counsel, would have time to retain an attorney. *See* Def. Mem. Ex. 3 at 1–5. On September 17, 1997, the removal hearing resumed, and Joseph S. Callahan, Esq. appeared on Bonhometre's behalf. The hearing began unsteadily when Callahan explained to the IJ that he intended "to plead [Bonhometre]." *Id.* at 6. Justifiably confused by such a reference in a civil proceeding, the IJ inquired as to what Callahan intended and—after Callahan stammered as he struggled to explain himself—suggested that he might have meant that he hoped to "file ... pleadings." *Id.* The IJ then asked whether Bonhometre denied removability and, upon learning that Callahan planned to contest removability, asked the legal basis for that position. To such an innocuous question, Callahan responded simply, "We'll take your ruling on it, Your Honor." *Id.* Perhaps unsurprisingly, the IJ found that Bonhometre was removable, *see id.*, and ordered that he be removed to Haiti, Def. Mem. Ex. 4. The IJ did not advise Bonhometre that, although he was removable, he might request relief from removal under several of the Act's provisions.

Bonhometre appealed the IJ's removal order to the Board of Immigration Appeals ("BIA"), but the BIA dismissed his *pro se* appeal on March 12, 1998. Def. Mem. Ex. 5. Despite the removal order, the INS released Bonhometre in October, 2000. Pet. ¶ 11. When Bonhometre attempted to renew a work permit in May, 2003, agents from the Bureau of Immigration and Customs Enforcement ("BICE") [6] took him into custody. Def. Mem. at 5.

Without the assistance of counsel, Bonhometre petitioned this Court for a writ of habeas corpus. We appointed counsel for him and directed counsel to submit an amended petition for a writ of habeas corpus. In the amended petition, Bonhometre argues that the Executive Office of Immigration Review ("EOIR") [7] violated his Fifth Amendment due process rights by failing to advise him that he had the opportunity to request relief from the removal order under Section 212(c) of the Act,[8] Section 212(h) of the Act,[9] and the Convention Against Torture (the "Convention").[10] Without addressing the merits of

**6.** Effective March 1, 2003, BICE assumed the INS's interior enforcement functions, and the INS ceased to exist. *See* Homeland Security Act, Pub.L. No. 107–296, §§ 441, 471, 116 Stat. 2135 (2002).

**7.** The Office "combine[s] the functions of immigration judges and the Board of Immigration Appeals into a single administrative component of the Department of Justice under the Attorney General." 68 Fed.Reg. 9824 (Feb. 28, 2003).

**8.** 8 U.S.C. § 1182(c) (1994) (repealed 1996).

**9.** 8 U.S.C. § 1182(h) (1994).

**10.** United Nations Convention Against Torture, and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, 23 I.L.M. 1027. On June 26, 1987, the date when the twentieth nation ratified it, the Convention came into force among its parties. The United States became

a signatory to the Convention on April 18, 1988, and President Reagan transmitted the Convention to the Senate for ratification on May 20, 1988. *See* Message to the Senate Transmitting the Convention Against Torture and Other Inhuman Treatment or Punishment, 24 Weekly Comp. Pres. Doc. 642 (May 20, 1988). The Senate ratified the Convention on October 27, 1990, 136 Cong. Rec. 36,198 (1990), and the United States became subject to the Convention's obligations on November 20, 1994. *See* Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8478, 8478 (Feb. 19, 1999). On October 21, 1998, Congress passed, and President Clinton signed, a law directing the appropriate federal agencies to prescribe regulations that would implement the United States's obligations under the Convention. *See* Foreign Affairs Reform and Restructuring Act of 1998, Pub.L. No. 105–277, § 2242(b), 112 Stat. 2681–761, 2681–822; *see also* 144 Cong. Rec. H11,668–69 (daily ed. Oct. 20, 1998) (House

Bonhometre's claim, defendants argue that we lack jurisdiction over his habeas petition and that he was not eligible for relief from removal. We address each of these contentions before reaching the constitutional issue.

*Analysis*

### A. *Jurisdiction*

■ District courts have long had jurisdiction over habeas corpus petitions pursuant to 28 U.S.C. § 2241 (2004). Despite the restrictions that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")[11] and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA")[12] have recently imposed on aliens' access to the federal courts, the Supreme Court has held that neither statute repealed habeas jurisdiction under § 2241. *See INS v. St. Cyr,* 533 U.S. 289, 314, 121 S.Ct. 2271, 2287, 150 L.Ed.2d 347 (2001). Still, Section 242 of the Act allows for judicial review of a final removal order only if "the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). Thus, our Court of Appeals has explained that a district court generally will not have jurisdiction over an alien's § 2241 petition unless the alien already has explored all avenues for administrative relief. *See Duvall v. Elwood,* 336 F.3d 228, 231 n. 5 (3d Cir.2003) ("[T]he requisites of § 1252(d)(1) do indeed apply to petitions for habeas corpus....").

■ When an alien fails to raise a claim with the EOIR, he has not exhausted his administrative remedies with respect to that claim. *See Alleyne v. INS,* 879 F.2d 1177, 1182 (3d Cir.1989); *Cisternas–Estay v. INS,* 531 F.2d 155, 160 (3d Cir.1976).

Here, Bonhometre never requested that the IJ or the BIA grant him relief under § 212(c), § 212(h), or the Convention, and he never suggested in any proceeding before the EOIR that their failure to advise him of such relief amounted to a denial of due process. We find, therefore, that Bonhometre failed to exhaust his administrative remedies for the constitutional violations alleged in his habeas petition.

■ Still, the Supreme Court has recognized a limited exception to the general exhaustion requirement. Even if an alien fails to exhaust administrative remedies, we may exercise jurisdiction "over claims considered 'wholly collateral' to a statute's review provisions and outside the agency's expertise, particularly where a finding of preclusion could foreclose all meaningful judicial review." *Thunder Basin Coal Co. v. Reich,* 510 U.S. 200, 212–213, 114 S.Ct. 771, 779, 127 L.Ed.2d 29 (1994) (citations and internal quotations omitted). Bonhometre's constitutional claims are "wholly collateral" to the Act's review provisions, and the EOIR has no expertise in discerning the outer limits of the Fifth Amendment's protections. Moreover, requiring aliens to challenge administratively an IJ's failure to advise them of their opportunities for relief would effectively foreclose all meaningful judicial review of the IJ's failure to advise because most aliens would not even know that the Act provided them such opportunities absent an IJ's advice. Thus, we have jurisdiction to consider Bonhometre's constitutional claims.

### B. *Eligibility for Relief*

Bonhometre claims that the IJ should have advised him that he could apply for

---

vote); 144 Cong. Rec. S12,809–10 (daily ed. Oct. 21, 1998) (Senate vote); 144 Cong. Rec. H11,708–09 (daily ed. Nov. 12, 1998) (President signs). INS and the EOIR complied by promulgating regulations that became effective on March 22, 1999. *See* 64 Fed.Reg.

8478 (Feb. 19, 1999) (codified in scattered sections of 8 C.F.R., including § 1208.16(c)).

**11.** Pub.L. No. 104–132, 110 Stat. 1214.

**12.** Pub.L. No. 104–208, 110 Stat. 3009–546.

relief under § 212(c), § 212(h) and the Convention, but the Government claims that he was not entitled to any of this relief. If it is clear that an alien is not eligible for relief under the Act, then due process does not require an IJ to advise the alien that he might apply for it. Thus, we must consider whether Bonhometre would have been eligible for the relief he claims the IJ wrongly failed to advise him about.

### 1. *Section 212(c)*

Until 1996, Section 212(c) of the Act provided that:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General.... The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.

8 U.S.C. § 1182(c) (1994) (repealed 1996). Although this language does not appear to apply to aliens who have never left the country, the BIA and the Courts of Appeals have concluded that "this discretionary relief may be extended to deportable aliens who have not exited the United States." *Katsis v. INS*, 997 F.2d 1067, 1070 (3d Cir.1993).

When Bonhometre pled guilty, a removable alien was eligible for § 212(c) relief if he (1) was "lawfully admitted for permanent residence"; and (2) had established a "lawful unrelinquished domicile of seven consecutive years." *Cf. Morel v. INS*, 90 F.3d 833 (3d Cir.1996) (construing domicile requirement). Defendants argue that Bonhometre has failed to meet either of these eligibility criteria. Because Bonhometre was a lawful *temporary* resident, not a lawful permanent resident, *see supra* note 1, we find that he was not eligible for § 212(c) relief in 1995 without deciding whether he also failed to establish a "lawful" domicile for seven consecutive years.[13]

### 2. *Section 212(h)*

As codified in 1995, § 212(h) of the Act gave the Attorney General discretion to waive an alien's removability if the alien (1) was a spouse, parent, or child of a United States citizen and (2) could demonstrate that removal would cause extreme hardship to the citizen. *See* 8 U.S.C. § 1182(h)(1)(B) (1994).[14] Because Bonhometre's common-law wife and three children are all United States citizens, we presume that there was at least a reasonable possibility that Bonhometre would have been eligible for § 212(h) relief under

---

**13.** Had Bonhometre been eligible for § 212(c) relief in 1995, Congress's subsequent repeal of § 212(c) with section 304(b) of IIRIRA, 110 Stat. at 3009–597 (1996), would not have made him ineligible for relief. Recognizing that applying IIRIRA retroactively would upset the expectations of aliens who were eligible for § 212(c) relief when they pled guilty, the Supreme Court in *St. Cyr* held that " § 212(c) relief remains available for aliens ... whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea

under the law then in effect." 533 U.S. at 326, 121 S.Ct. at 2293.

**14.** We recognize that § 1182 refers to waivers of "inadmissib[ility]" and does not explicitly sanction waivers of removability. Our Court of Appeals, however, recognizes that this nicety may be a distinction without a difference. *See, e.g., De Leon–Reynoso v. Ashcroft*, 293 F.3d 633, 637–38 (3d Cir.2002) (identifying a situation when an alien may apply for a § 212(h) waiver in a removal proceeding). Because defendants do not argue that § 212(h) waivers are not available in removal proceedings, we need not dwell on this point.

the statutory scheme that existed at the time of his guilty plea.

IIRIRA changed that scheme by forbidding the Attorney General from granting § 212(h) waivers to aliens who had been convicted of aggravated felonies. *See* IIRIRA, § 348(a), 110 Stat. at 3009–639 (1996). Bonhometre has never disputed that the crimes to which he pled guilty were aggravated felonies, so IIRIRA would make him ineligible for § 212(h) relief if it applied retroactively to him. Although *St. Cyr* discussed the retroactive repeal of § 212(c), its reasoning applies with equal force to § 212(h). The elimination of any possibility of a § 212(h) waiver has an obvious and severe retroactive effect on aliens who pled guilty to aggravated felonies before IIRIRA's enactment and who would have been eligible for such a waiver at the time of their pleas. We decline to interpret IIRIRA as denying those aliens access to relief under § 212(h). Thus, there remained at least a reasonable possibility that Bonhometre was eligible for § 212(h) relief at his removal hearing.

### 3. *Convention Against Torture*

■ When an alien applies for the withholding of removal under the Convention Against Torture, an IJ must first determine whether the alien is "more likely than not to be tortured in the country of removal." 8 C.F.R. § 1208.16(c)(4) (2004); *see also* 8 C.F.R. § 1208.18(a) (2004) (defining "torture"). If the IJ finds that the alien is likely to be tortured in the country of removal, then the alien is entitled to protection under the Convention.

The form of protection available to the alien depends upon whether the alien is subject to mandatory denial of withholding. In this case, Bonhometre would be subject to mandatory denial of withholding only if he "f[ell] within section 241(b)(3)(B) of the Act" 8 C.F.R. § 1208.16(d)(2) (2004). Under that section, an alien who has been "convicted by a final judgment of a particularly serious crime" is subject to mandatory denial of withholding. 8 U.S.C. § 1231(b)(3)(B)(ii) (2004).[15] Thus, if Bonhometre was convicted of a "particularly serious crime", he would be subject to a mandatory denial of withholding of removal, and the only protection to which the Convention would entitle him would be a deferral of removal. 8 C.F.R. § 1208.16(c)(4) (2004); *see also* 8 C.F.R. § 1208.17 (2004) (explaining that an alien whose removal has been deferred is subject to detention until termination of deferral and subsequent removal). On the other hand, federal regulations would require an Immigration Judge to withhold removal if Bonhometre was not convicted of a particularly serious crime. 8 C.F.R. § 1208.16(d)(1) (2004).

For purposes of this case, the most remarkable feature of this administrative procedure is that none of it existed at the

---

**15.** The statute makes clear that an aggravated felony for which the alien received a sentence of imprisonment of at least five years is a "particularly serious crime," but it leaves the Attorney General with discretion to determine whether aggravated felonies for which the alien received a shorter sentence—such as the aggravated felonies for which Bonhometre was convicted—are particularly serious crimes. *See* 8 U.S.C. § 1231(b)(3)(B) (2004). In an exercise of this discretion, the BIA has explained that, "in judging the seriousness of a crime, we look to such factors as the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the respondent is a danger to the community." *In re L–S–*, 22 I. & N. Dec. 645, 649, 1999 WL 219344 (1999); *see also Moi Chong v. Quarantillo*, 264 F.3d 378, 387–88 (3d Cir.2001) (upholding BIA's interpretation of "particularly serious crime"). Our disposition of this case does not require us to decide whether Bonhometre was convicted of a "particularly serious crime."

time of Bonhometre's removal hearing. Although the Convention's requirements have bound the United States since November 20, 1994, the EOIR did not implement the administrative procedures that we have just reviewed until March 22, 1998. *See supra* note 10. During the intervening three and one-half years—a period that includes Bonhometre's September 17, 1997 removal hearing—the INS used a "pre-regulatory administrative process" to assess "whether removing an alien to a particular country [was] consistent with Article 3 [of the Convention]." *See* Regulations Concerning the Convention Against Torture, 64 Fed.Reg. 8478, 8479 (Feb. 19, 1999). The informality of that system makes judicial review especially difficult, but the EOIR cannot now use its failure to articulate transparent standards to argue that Bonhometre would not have been eligible for relief. We presume, therefore, that there is at least a reasonable possibility that, at his removal hearing, Bonhometre would have been eligible for some form of relief from removal under the Convention.[16]

## C. *Constitutional Claims*

■ Because there was a reasonable possibility that Bonhometre was entitled to a § 212(h) waiver and to protection from removal under the Convention, we must decide whether the EOIR denied him due process when it failed to advise him of these possibilities for relief. Our Court of Appeals has not addressed this issue, and the other Courts of Appeals have not yet reached a consensus. *Compare United States v. Muro–Inclan,* 249 F.3d 1180, 1184 (9th Cir.2001) ("[W]hen the record

before the Immigration Judge 'raises a reasonable possibility' of relief from deportation under [§ 212(h)], it is a denial of due process to fail to inform an alien of that possibility at the deportation hearing.") *with United States v. Aguirre–Tello,* 353 F.3d 1199, 1205 (10th Cir.2004) (en banc) ("[T]he IJ's failure to specifically advise [the alien] that he could be eligible for § 212(c) relief … was not a constitutional violation."); *United States v. Lopez–Ortiz,* 313 F.3d 225, 231 (5th Cir.2002) ("[T]he Immigration Judge's error in failing to explain [alien's] eligibility [for § 212(c) relief] does not rise to the level of fundamental unfairness."), *cert. denied,* 537 U.S. 1135, 123 S.Ct. 922, 154 L.Ed.2d 827 (2003). Given the absence of binding precedent and the conflicting guidance from other Circuits, we must blaze our own trail.

To determine whether due process requires IJs to advise aliens of the opportunity to request relief, we balance (1) the alien's interest; (2) the risk that, unless he receives the advice, the alien will suffer an erroneous deprivation of his interest; (3) the probable value, if any, of the advice; and (4) the Government's interest, including the fiscal and administrative burdens that giving the advice would entail. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

Bonhometre has a weighty interest in being advised of all opportunities for relief from a removal order because his interest in remaining in the United States is very strong. For more than two decades, he has enjoyed this country's relative peace and prosperity while political turmoil has

---

**16.** We recognize that, as part of the regulations that it announced in 1999, EOIR included a ninety-day window during which aliens already subject to final removal orders could apply for relief under the new regulations. *See* 8 C.F.R. § 1208.18(b)(2) (2004). This provision made aliens like Bonhometre eligi-

ble for protection under the Convention during a short period when they would otherwise have been ineligible, but it did not purport to—and could not—change retroactively Bonhometre's eligibility for protection at the time of his removal hearing.

repeatedly disrupted his homeland, as this month's newspapers have most recently documented. *See, e.g.,* Christopher Marquis & Lydia Polgreen, *U.S. to Mediate in Haiti Crisis; Urges Americans Leave,* N.Y. Times, Feb. 20, 2004, at A6. He has entered a common-law marriage with a United States citizen, and his three United States citizen children are strangers to the land of his birth. If Bonhometre is removed to Haiti, he will face not only the threats to his personal and financial security that return will entail, but also an infinitely more painful estrangement from his family. We cannot overstate his interest in exploring all possibilities for avoiding this fate.

The second factor that we must consider is the risk that, unless an IJ advises him of the opportunities for relief from removal, Bonhometre will suffer an erroneous deprivation. In this context, we understand "error" to be a case where an alien does not apply for relief but the Attorney General would have granted relief if the alien had applied for it. Because his children are United States citizens, Bonhometre is among the class of aliens who are eligible for a § 212(h) waiver. *See* 8 U.S.C. § 1182(h)(1)(B) (1994). Still, no one can know the extent to which the IJ's failure to advise Bonhometre about the possibility of § 212(h) relief increased the risk of error here because the Attorney General retains complete discretion to grant or withhold such relief. 8 U.S.C. § 1182(h) (1994) (recognizing that Attorney General "may, in his discretion," grant relief under § 212(h)). We can, however, be certain that the IJ's failure to inform Bonhometre that the Convention might shield him from removal increased the risk of error be-

cause—throughout the time that it acted through its "pre-regulatory administrative process"—the INS consistently "used its . . . discretionary authority to ensure that [an alien likely to be tortured was] not removed." *See* Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8478, 8479 (Feb. 19, 1999).

When there is a reasonable possibility that an alien would be entitled to relief under § 212(h) or the Convention, the probable value of requiring an IJ to advise him of that opportunity depends on how likely he would be to apply for relief without the IJ's advice. With its ever-changing maze of regulations, statutes, EOIR decisions, and judicial opinions, the dizzying complexity of immigration law demands the skill of an experienced lawyer. Because so few aliens are likely to possess such thorough knowledge of the laws of a nation of which they are not citizens, many eligible aliens risk failing to apply for relief from removal.[17] There is, therefore, immeasurable value in requiring the specialized corps of IJs to ensure that the rights of acutely vulnerable people are not so easily lost.

Finally, we reach the Government's interest in not advising removable aliens of opportunities for relief under § 212(h) or the Convention. An IJ could disclose these possibilities with minimal effort, and so requiring her or him to do so would not significantly burden the Government's interest in administrative efficiency. Indeed, EOIR implicitly concedes this point by requiring IJs, in similar proceedings, to "inform the alien of his or her apparent eligibility to apply for any . . . benefits." 8 C.F.R. § 1240.11(a)(2) (2004).

---

**17.** Though the presence of sufficiently experienced counsel may mitigate these risks, the record in this case suggests that Bonhometre's lawyer lacked the requisite experience. Despite the reasonable possibility that Bonhometre was eligible, the attorney failed to apply for relief under either § 212(h) or the Convention, and the transcript of the removal hearing reveals enough stumbles to remind us that the mere presence of an attorney cannot always ensure that the client knows of all avenues for relief that remain available to him.

Based upon our weighing of the *Eldridge* factors, we hold that the EOIR violated Bonhometre's due process rights when—in a case where there was a reasonable possibility that he was eligible for relief under § 212(h) and the Convention—it failed to advise him that he could apply for such relief. *See United States v. Muro–Inclan*, 249 F.3d 1180 (9th Cir. 2001).

*Conclusion*

We have jurisdiction over Bonhometre's "collateral" challenge to a final order of removal. At the time of the removal hearing, there was a reasonable possibility that Bonhometre was eligible for relief from removal under § 212(h) and the Convention Against Torture, but the IJ did not advise him of those opportunities for relief. This failure to advise deprived Bonhometre of his Fifth Amendment right to due process. Thus, we shall vacate the removal order and remand this case to the EOIR for further proceedings.[18]

### ORDER

AND NOW, this 20th day of February, 2004, upon review of petitioner's amended petition for a writ of habeas corpus (docket entry # 9) and defendants' response thereto, and in accordance with the accompanying Memorandum, it is hereby ORDERED that:

1. Bonhometre's amended petition for a writ of habeas corpus is GRANTED;

2. Immigration Judge William Joyce's Order of September 17, 1997 in Case A91–436–391 is VACATED;

3. This matter is REMANDED to the Executive Office of Immigration Review for a new removal hearing consistent with our Memorandum; and

4. The Clerk shall CLOSE this civil action statistically.

---

[18]. At the new removal hearing, Bonhometre may apply for relief from removal on any basis recognized in law, including § 212(c). Although we found that Bonhometre was a lawful temporary resident, *see supra* note 1, our factual finding was based upon the record now before us, and Bonhometre is free to supplement the record at the new hearing with evidence that he is a lawful permanent resident who would be eligible for § 212(c) relief.