**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　*Plaintiff-Appellant,*

v.

EDMUNDO LOPEZ-VELASQUEZ,
　　　　*Defendant-Appellee.*

No. 07-30241

D.C. No.
CR-06-00434-1-KI

OPINION

Appeal from the United States District Court
for the District of Oregon
Garr M. King, District Judge, Presiding

Argued and Submitted
July 9, 2008—Portland, Oregon

Filed June 23, 2009

Before: Harry Pregerson and Stephen Reinhardt,
Circuit Judges, and Lyle E. Strom,* District Judge.

Opinion by Judge Reinhardt

---

*The Honorable Lyle E. Strom, Senior United States District Judge for the District of Nebraska, sitting by designation.

**COUNSEL**

Karin J. Immergut, Esq., United States Attorney, Johnathan S. Haub, Esq., Kelly A. Zusman, Esq., Assistant United States Attorneys, Portland, Oregon, for the plaintiff-appellant.

Terry Kolkey, Esq., Ashland, Oregon, for the defendant-appellee.

**OPINION**

REINHARDT, Circuit Judge:

Edmundo Lopez-Velasquez waived his right to appeal and was deported in 1994 in a group proceeding in which the

immigration judge ("IJ") did not advise him of the availability of relief from deportation under section 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c) (repealed 1996). He had a United States citizen wife and two young United States citizen children at the time, and would surely have been a strong candidate for this discretionary relief had he applied for it.

Over ten years later, in 2006, Lopez-Velasquez was indicted for illegal reentry in violation of 8 U.S.C. § 1326. The district court dismissed the indictment, holding that the 1994 deportation order was invalid due to the IJ's failure to inform him of his apparent eligibility for § 212(c) relief. We affirm.

## I. Background

In 1986, as part of the Immigration Reform and Control Act ("IRCA"), Congress enacted the Special Agricultural Workers program ("SAW"), a one-time amnesty program to stabilize the agricultural workforce by legalizing undocumented aliens already working in agriculture. *See* 8 U.S.C. § 1160. Through the SAW program, an alien who had resided in the United States and performed seasonal agricultural services for at least 90 man-days during the 12-month period ending on May 1, 1986, could obtain temporary legal resident status, which would automatically adjust to permanent resident status after some period of time. 8 U.S.C. § 1160(a). The SAW statute specified that the applications would be accepted during the 18-month period beginning on June 1, 1987 and ending on November 30, 1988. 8 U.S.C. § 1160(a)(1)(A); 8 C.F.R. § 210.2(c)(1).

One of the beneficiaries of the SAW program was Edmundo Lopez-Velasquez, a native and citizen of Mexico, who came to the United States in the early 1980s and held a number of seasonal agricultural jobs in Oregon. He applied for legal status under the SAW program in October of 1987,

and his application was granted in March of the following year.

In 1987, Lopez-Velasquez married a United States citizen, with whom he eventually had two children, both of whom are United States citizens. He was living with his wife and children when he was arrested for delivery of a controlled substance in 1993. He pled guilty and was sentenced to eight months in state prison. The Immigration and Naturalization Service ("INS")[1] initiated deportation proceedings based on this conviction.

On February 10, 1994, Lopez-Velasquez was brought before an IJ for a group deportation hearing.[2] He was not represented by counsel. The INS attorney, after reviewing Lopez-Velasquez's file, informed the IJ that Lopez-Velasquez gained temporary residence in October of 1987 and permanent residence in December of 1990. After asking each alien about the circumstances of his case, the IJ asked the INS attorney whether he was "aware of any form of relief available for any [of] these individuals," and the attorney responded, "I don't believe so[,] Judge." The IJ then ordered that all aliens at the hearing be deported to Mexico without advising Lopez-Velasquez of any potential eligibility for relief. The IJ also told the members of the group that they had the right to appeal the decision by filing a written notice of appeal within ten days. Lopez-Velasquez apparently waived his right to appeal, and was deported. At that time, his American citizen daughter was five years old and his American citizen son was four.

---

[1]The Immigration and Naturalization Service was abolished on March 1, 2003 pursuant to section 471 of the Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135 (2002), which created the Department of Homeland Security.

[2]The government's Opening Brief states that Lopez-Velasquez appeared for a deportation hearing on or around February 12, 1994, but that appears to be the date of deportation.

Lopez-Velasquez subsequently returned to the United States and more than ten years later, in October 2006, was indicted for knowingly and unlawfully reentering in violation of 8 U.S.C. § 1326.[3] He moved to dismiss the indictment on the ground that the original 1994 deportation order was invalid because the IJ failed to inform him of the availability of § 212(c) relief, and thus violated his due process rights. The district court granted the motion. We review *de novo* its dismissal of the indictment based on due process defects in the underlying deportation proceeding, *see, e.g.*, *United States v. Ahumada-Aguilar*, 295 F.3d 943, 947 (9th Cir. 2002), and affirm.

## II.   Analysis

Judicial review of a prior deportation order is appropriate "in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense." *United States v. Mendoza-Lopez*, 481 U.S. 828, 839 (1987). To succeed in such a collateral attack, the defendant must demonstrate that: (1) he exhausted any administrative remedies available to him to appeal the removal order, (2) the underlying proceedings at which the order was issued improperly deprived him of the opportunity for judicial review, and (3) the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d).

We have held that where the defendant's waiver of the right to appeal a removal order in the underlying removal proceeding was not "considered and intelligent," he satisfies the first two requirements of § 1326(d) because he was effectively deprived of the right to administrative appeal and the opportunity for judicial review. *See United States v. Pallares-Galan,* 359 F.3d 1088, 1096 (9th Cir. 2004). The defendant's waiver

---

[3]Lopez-Velasquez was also deported in 2003 after pleading guilty to two counts of illegal entry in violation of 8 U.S.C. § 1325(a), however, that deportation is not deemed to be material by either party.

cannot be "considered" or "intelligent" if "the record contains an inference that [the alien is] eligible for relief from deportation," but the IJ fails to "advise [him] of this possibility and give him the opportunity to develop the issue." *Id.* (internal quotation marks omitted); *Mendoza-Lopez*, 481 U.S. at 840. As to the third requirement, an underlying removal order is fundamentally unfair if "(1) [a defendant's] due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004) (internal quotation marks and citations omitted).

The district court held that Lopez-Velasquez's waiver of his right to appeal the 1994 deportation order was invalid because the IJ failed to advise him of the possibility of his eligibility for relief under section 212(c) of the INA. At the time of the deportation, § 212(c) authorized the Attorney General to grant discretionary relief from deportation to permanent resident aliens who had established seven consecutive years of "lawful unrelinquished domicile" and had not served more than a five-year term of imprisonment for an aggravated felony. 8 U.S.C. § 1182(c) (1994).[4]

The government concedes that Lopez-Velasquez would have been eligible for the exercise of the Attorney General's discretion but for the seven-year legal residency requirement for § 212(c) relief. It argues, however, that because only six years and four months had transpired from the date that Lopez-Velasquez submitted his SAW application to the date of his deportation hearing, he had not met the residency

---

[4]Section 212(c) was subsequently repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), but relief under the section remains available for aliens who pled guilty prior to the enactment of IIRIRA. *INS v. St. Cyr*, 533 U.S. 289, 326 (2001). Our recent en banc decision in *Abebe v. Mukasey*, 554 F.3d 1203, 1207 (9th Cir. 2009) does not affect this case, as it explicitly did not undermine the authority of the BIA to grant § 212(c) relief from deportation.

requirement and thus the IJ did not violate Lopez-Velasquez's due process rights by failing to inform him of his possible eligibility for § 212(c) relief.[5]

**[1]** The government errs by framing the pertinent question as whether Lopez-Velasquez was definitively eligible for § 212(c) relief at the time of his hearing before the IJ. Aliens in removal proceedings will often "not have the wherewithal to make a complete showing of eligibility." *Moran-Enriquez v. INS*, 884 F.2d 420, 423 (9th Cir. 1989). The INA regulations therefore require that, "where the record, fairly reviewed by an individual who is intimately familiar with the immigration laws — as IJs no doubt are — raises a *reasonable possibility* that the [alien] may be eligible for relief, the IJ must advise [him] of this possibility and give him the opportunity to develop the issue." *Id.* (emphasis added). Where "the record contains an inference that [the alien] is eligible for relief from deportation," but the IJ fails to "advise [him] of this possibility," *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000) (internal quotation mark omitted), the alien's waiver of his right to appeal is not considered or voluntary. *See id.* We have held that the record lacked an inference of eligibility of relief only when the possibility of relief was remote. *See, e.g.*, *Valencia v. Mukasey*, 548 F.3d 1261 (9th Cir. 2008) (holding that the IJ did not need to advise Valencia of the eligibility for asylum when she did not suggest any basis for fear of returning to Mexico).

**[2]** The record in Lopez-Velasquez's proceeding raised a reasonable possibility of eligibility for § 212(c) relief. As the

---

[5]The government does not contend that Lopez-Velasquez had only three years and two months of legal residency for § 212(c) relief under *Castillo-Felix v. INS*, 601 F.2d 459 (9th Cir. 1979), the applicable law at the time, most likely recognizing that IRCA has changed the rule governing the computation of the length of residency for SAW beneficiaries and others. As explained below, we so held the year after Lopez-Velasquez's deportation proceeding. *See Ortega de Robles v. INS*, 58 F.3d 1355, 1360-61 (9th Cir. 1995).

government has conceded, the only doubt with regard to Lopez-Velasquez's eligibility for relief was whether he had accumulated seven years of residency in the United States. As to that issue, the record, as recited by the INS attorney at his removal proceeding, showed that Lopez-Velasquez gained temporary residency in October of 1987 when he applied for the SAW program and his application was approved. This fact raised the inference that he had been living in the country for over seven years, as he was required to have performed agricultural services in the United States for at least 90 man-days prior to May 1, 1986, i.e., at least since February 1, 1986, in order to be eligible for SAW amnesty. February 1, 1986 is, of course, more than *eight* years before the date of Lopez-Velasquez's deportation hearing.

**[3]** The likely length of Lopez-Velasquez's presence in the United States, along with changes in immigration laws brought about by IRCA and its amnesty programs, made it reasonably possible that Lopez-Velasquez in fact had satisfied the seven year requirement of "lawful unrelinquished domicile" necessary to qualify for § 212(c) relief. Although in *Castillo-Felix v. INS*, 601 F.2d 459 (9th Cir. 1979), we determined that an alien must have permanent residency to establish such "lawful unrelinquished domicile," the intervening enactment of IRCA's amnesty programs raised the reasonable possibility that *Castillo-Felix* no longer remained controlling law. Indeed, a year after Lopez-Velasquez's removal proceeding, we held that IRCA superseded *Castillo-Felix*. *See Ortega de Robles v. INS*, 58 F.3d 1355, 1360 (9th Cir. 1995). We concluded that "lawful unrelinquished domicile" includes the period of temporary residency granted by the § 245A general amnesty provision of the IRCA, because during that time an alien is lawfully and physically present and intends to remain in the United States. *See id.* at 1359-61.

**[4]** We had no reason to consider in *Ortega de Robles* when "lawful unrelinquished domicile" began for purposes of the

SAW program.[6] Lopez-Velasquez could reasonably have argued, however, at the time of his removal proceeding, as he does now, that it began as far back as at the date of IRCA's enactment for agricultural workers already in the United States who could allege a nonfrivolous claim of SAW eligibility. Such workers could not be excluded or deported after the date of IRCA's passage and could be given temporary employment authorization until June 1, 1987, when they could apply for SAW amnesty. 8 U.S.C. § 1160(d).[7] Under this calculation, for § 212(c) purposes Lopez-Velasquez's "lawful unrelinquished domicile" could have begun on November 6, 1986, the date of IRCA's enactment. He therefore would have had over seven years of residency at the time of his removal proceeding in February 1994.

We need not decide, however, whether Lopez-Velasquez could have prevailed on his argument that his "lawful unrelinquished domicile" began at IRCA's enactment or at a later date that would have permitted him to accumulate the requi-

[6]The trigger date for "lawful unrelinquished domicile" under SAW and § 245A amnesty might indeed be more favorable to SAW beneficiaries than to those applying for § 245A amnesty. Under § 245A of IRCA, the alien was required to establish that he had "resided in the United States in an unlawful status" prior to his application for amnesty, thus foreclosing him from also arguing that he was in lawful status previously for purposes of § 212(c) relief. *See Castellon-Contreras v. INS*, 45 F.3d 149, 154 (7th Cir. 1995). By contrast, the SAW amnesty provision required only that the alien establish that he had "resided in the United States." *Compare* 8 U.S.C. § 1255a(a)(2)(A) (1994) *with* 8 U.S.C. § 1160(a)(1)(B) (1994).

[7]The government argues that, even if his residency began at the time of IRCA's enactment, Lopez-Velasquez relinquished his continual residency because he did not file a SAW application on June 1, 1987, the first day on which an application could be filed. After June 1, 1987, however, he could have presented a SAW application at any time to avoid removal, *see* 8 U.S.C. § 1160(d)(2), and he in fact did so a few months later. The filing of the application served to preclude him from being excluded or deported, and granted him authorization to work in the United States. *See id.* At the least, there was an inference of residency that required the IJ to give notification of the possibility of eligibility for § 212(c) relief.

site seven years. We need conclude only that, had Lopez-Velasquez been informed of the potential availability of § 212(c) relief, he could have appealed the IJ's decision. This opportunity would have been invaluable to him because, at the time of his hearing, for purposes of § 212(c) relief, "lawful unrelinquished domicile" continued to accumulate until "the Board render[ed] its decision in the case upon appeal . . . ." *Matter of Lok*, 18 I & N Dec. 101, 105 (B.I.A. 1981), *aff'd, Lok v. INS*, 681 F.2d 107 (2d Cir. 1982); *Foroughi v. I.N.S.*, 60 F.3d 570 (9th Cir. 1995).**[8]** At the time of his removal proceedings, Lopez-Velasquez had, even according to the government, already accrued six years and four months of "lawful unrelinquished domicile." As the Department of Justice noted, prior to adopting procedural reforms in 2002, the BIA appeal process took a long time and cases "routinely remained pending before the [BIA] for more than two years, and some [had] taken more than five years to resolve." *Board of Immigration Appeals: Procedural Reforms to Improve Case Management*, 67 Fed. Reg. 54,878, 54,879 (Aug. 26, 2002). Whether or not Lopez-Velasquez prevailed on his appeal on his theory regarding the starting date of his lawful unrelinquished domicile, he would, during the pendency of that appeal, have been able to accumulate the eight months that he was missing according to the government, and thus would have accrued the requisite seven years of residency that would have made him eligible for § 212(c) relief. *See United States v. Ahumada-Aguilar*, 295 F.3d 943, 951-52 (9th Cir. 2002) (holding that alien was prejudiced by his waiver of appeal because he would have accumulated the final ten months towards his residency requirement for § 212(c) relief during his appeal); *United States v. Jimenez-Marmolejo*, 104 F.3d 1083, 1085-86 (9th Cir. 1996) (holding that an alien who was two months away from the seven year mark at the time

---

**[8]**When Congress repealed § 212(c) relief under IIRIRA and replaced it with cancellation of removal, it specified that the period of residency that is required for that relief ends when the alien is served with a notice to appear or commits a certain criminal offense. 8 U.S.C. § 1229b(d)(1).

of deportation proceedings would have become eligible for
§ 212(c) had he appealed).

**[5]** Given the changes in immigration law, the length of
Lopez-Velasquez's residency in the United States, and his
proximity, under the government's theory, to having accumu-
lated seven years of temporary residency under SAW, the IJ
should have recognized a "reasonable possibility" that Lopez-
Velasquez might be eligible for § 212(c) relief at the time of
the proceedings. Had the IJ informed him of such a possibil-
ity, Lopez-Velasquez could have appealed and, even if he had
lost, would have accumulated the remaining time necessary to
establish the seven years residency for § 212(c) relief.
Because the IJ failed to advise him of the possibility of eligi-
bility, or even of the existence of such relief, Lopez-
Velasquez's waiver of his right to appeal was defective and
he was improperly deprived of the opportunity for judicial
review. *See, e.g.*, *Pallares-Galan*, 359 F.3d at 1103; *United
States v. Leon-Paz*, 340 F.3d 1003, 1007 (9th Cir. 2003).

\* \* \*

**[6]** We also conclude that Lopez-Velasquez's prior depor-
tation order was "fundamentally unfair" under § 1326(d)(3)
because he suffered prejudice as a result of his defective
deportation proceeding. *See, e.g.*, *Pallares-Galan*, 359 F.3d at
1103. To demonstrate prejudice, Lopez-Velasquez need only
show that he had "plausible grounds for relief." *Jimenez-
Marmolejo*, 104 F.3d at 1086. The requirement to show such
"plausible grounds" does not present a very high hurdle, given
that prior to IIRIRA, more than half of § 212(c) applications
resulted in the granting of relief by the BIA. *See INS v. St.
Cyr*, 553 U.S. 289 & n.5.

In determining whether to exercise its discretion to grant a
§ 212(c) petition, the BIA considers "all the facts and circum-
stances of a particular case, taking into account the social and
humane considerations presented in an applicant's favor and

balancing them against the adverse factors that evidence the applicant's undesirability as a permanent resident." *Yepes-Prado v. INS*, 10 F.3d 1363, 1365-66 (9th Cir. 1993). The favorable factors include: "1) family ties within the United States; 2) residence of long duration in this country (particularly when residence began at a young age); 3) hardship to the petitioner or petitioner's family if relief is not granted; 4) service in the United States armed forces; 5) a history of employment; 6) the existence of business or property ties; 7) evidence of value and service to the community; 8) proof of rehabilitation if a criminal record exists; 9) other evidence attesting to good character." *Id.* at 1366. Negative factors include: "1) the nature and underlying circumstances of the exclusion or deportation ground at issue; 2) additional violations of the immigration laws; 3) the existence, seriousness and recency of any criminal record; 4) other evidence of bad character or the undesirability of the applicant as a permanent resident." *Id.*

**[7]** Lopez-Velasquez could have offered many facts and circumstances favoring the discretionary grant of § 212(c) relief, including nearly 13 years of residency and employment in the United States, and hardship to him, his United States citizen wife, and two young United States citizen children. He had only one criminal conviction, which resulted in an eight months sentence. Lopez-Velasquez has more than met his burden of demonstrating plausible grounds for relief, and the government has not contended otherwise.

## III.    Conclusion

We conclude that Lopez-Velasquez's prior deportation was "fundamentally unfair" and cannot serve as the basis for his illegal reentry conviction because he was prejudiced by the IJ's failure to inform him of his possible eligibility for § 212(c) relief. We therefore affirm the district court's dis-

missal of his indictment for illegal reentry under 8 U.S.C.
§ 1326.[9]

**AFFIRMED.**

---

[9]In *Lopez-Velasquez v. Mukasey*, 308 Fed. App'x 236 (9th Cir. 2009),
a memorandum disposition in which we reviewed two administrative
orders in connection with a pending deportation proceeding, we rejected
a collateral attack on Lopez-Velasquez's 1994 deportation order. The peti-
tion before us then did not, however, raise the same legal or factual ques-
tions as does the present appeal. First, in challenging the prior deportation
order in a reinstated deportation proceeding, the applicable standard of
review for the collateral challenge is "gross miscarriage of justice." *Id.*;
*Garcia de Rincon v. DHS*, 539 F.3d 1133, 1138 (9th Cir. 2008). Here,
because this appeal arises in a criminal case, the more lenient standard in
§ 1326(d) applies — "fundamental unfairness," which is construed as sim-
ply a violation of due process such as a failure to notify an alien of poten-
tially available discretionary relief. *See Alvarenga-Villalobos v. Ashcroft*,
271 F.3d 1169, 1173 (9th Cir. 2001) (explaining difference in standards
applied to collateral attacks in non-criminal deportation cases and in crimi-
nal prosecutions); *Ramirez-Molina v. Ziglari*, 436 F.3d 508, 514 n.9 (5th
Cir. 2006) (noting difference in case law between a collateral attack in the
context of a petition for review of a reinstatement decision and criminal
prosecution for illegal reentry). Second, in the memorandum disposition
we applied *Castillo-Felix* which had not been overruled at the time of
Lopez-Velasquez's hearing and assumed that he lacked three years and
nine months of lawful unrelinquished domicile; here, however, the gov-
ernment concedes that, under *Ortega de Robles*, which it acknowledges to
be controlling, Lopez-Velasquez was short of the requisite seven years by
only eight months. Finally, we did not consider in the memorandum dispo-
sition that at the time of his removal proceedings Lopez-Velasquez had a
reasonable possibility of eligibility for § 212(c) relief on the basis of an
unsettled construction of the term "lawful unrelinquished domicile," and
that, in any event, he would have accumulated the remaining part of the
requisite seven years while pursuing his argument on appeal. All three of
these considerations require that in assessing the constitutionality of the
prior deportation proceedings for purposes of this criminal prosecution, we
reach a different result than that which we previously reached with respect
to our review of a purely administrative proceeding. To the extent that any
dicta in the memorandum disposition purport to resolve any issues pre-
sented in this entirely dissimilar type of proceeding, we are not bound by
them.