**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　　*Plaintiff-Appellee,*

　　　　　v.

MIGUEL MORIEL-LUNA, Miguel
Sillas Moriel,
　　　　　　　*Defendant-Appellant.*

No. 08-50124

D.C. No.
8:04-cr-00168-
JVS-1

OPINION

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted
August 31, 2009—Pasadena, California

Filed October 29, 2009

Before: Ronald M. Gould and Richard C. Tallman,
Circuit Judges, and Owen M. Panner, District Judge.*

Opinion by Judge Gould

---

*The Honorable Owen M. Panner, Senior District Judge for the District
of Oregon, sitting by designation.

14623

## COUNSEL

Jonathan D. Libby (argued), Federal Public Defender's Office, Los Angeles, California, for the plaintiff-appellee.

Douglas F. McCormick (argued), Office of the U.S. Attorney, Santa Ana, California, and Michael J. Raphael, Office of the U.S. Attorney, Los Angeles, California, for the defendant-appellant.

**OPINION**

GOULD, Circuit Judge:

Miguel Moriel-Luna ("Moriel") appeals the district court's denial of his motion to dismiss his indictment for illegal reentry into the United States by a deported alien in violation of 8 U.S.C. § 1326. On an earlier appeal, we reversed the district court by concluding that the Immigration Judge ("IJ") at Moriel's deportation hearing should have informed Moriel of possible relief under sections 212(c) and 212(h) of the Immigration and Nationality Act (INA). We remanded to the district court to determine whether the government could show that the IJ's error did not cause prejudice. On remand, the district court concluded that there was no prejudice because a visa was not immediately available to Moriel, a prerequisite to receiving such relief. The district court also rejected Moriel's new arguments that he could obtain section 212(c) relief without an immediately available visa and that the government denied his right to counsel at his deportation hearing. We affirm.

**I**

Moriel is a Mexican citizen who entered the United States with his parents as a permanent resident in 1985 at the age of twelve. In 1992, Moriel pleaded guilty to assault with a firearm, in violation of California Penal Code section 245(a)(2), after he fired several gunshots at two occupants of a car and continued shooting at them as they fled on foot. Moriel served thirty-two months of a five-year sentence.

Upon Moriel's release from prison in 1994, the government initiated deportation proceedings against him. The government alleged that Moriel was deportable because his conviction involved the use of a firearm, *see* 8 U.S.C. § 1251(a)(2)(C) (1995),[1] and was an aggravated felony, *see* 8 U.S.C. § 1251(a)(2)(A)(iii).

An attorney entered an appearance for Moriel in October 1994, but at his April 1995 hearing Moriel appeared without counsel. Moriel told the IJ that he spoke English, and the IJ conducted the hearing without a translator. The IJ told Moriel that he had a right to be represented by counsel and gave him a list of legal-services organizations. Moriel asked for time to find an attorney, and the IJ granted a one-week continuance. The IJ warned Moriel, however, that if he returned without an attorney he would not again continue the case and would assume that Moriel would proceed pro se. When the hearing resumed, Moriel said that he did not have an attorney, and he answered, "Yes," when the IJ asked him if would speak for himself that day. Moriel did not at this hearing ask for more time to find an attorney or indicate that he made an effort to obtain one.

When the IJ explained to Moriel his possible eligibility for relief, Moriel told the IJ that his parents were legal residents but not U.S. citizens. Moriel also told the IJ that he was single and did not mention that he had a girlfriend. The IJ ordered Moriel deported for having committed a crime involving the use of a firearm and an aggravated felony, and he made an additional oral finding that Moriel committed a crime involving moral turpitude.

About eight months after his deportation hearing, Moriel married a U.S. citizen, and as of 2004 the couple was still married and had three children. According to a written decla-

---

[1] Unless otherwise indicated, citations to statutes refer to the versions in effect during Moriel's 1995 deportation proceeding.

ration by Moriel's wife, the two met in the fall of 1994 and became engaged "soon after." Moriel's wife said that she and Moriel "would have definitely been married a few months earlier if we had been properly advised of the impact upon my husband's immigration status in this country."

After his deportation, Moriel illegally reentered the United States on many occasions. Moriel illegally reentered the United States in July 1995 and was arrested for possession of drug paraphernalia in January 2001. The government reinstated his 1995 deportation order and deported him on January 9, 2001. Immigration officials discovered Moriel in the United States on July 26, 2001, after his arrest for domestic violence. The government charged Moriel with violating 8 U.S.C. § 1326, which prohibits the unauthorized reentry of a removed alien. Moriel pleaded guilty and was sentenced to thirty months in prison. Following his release from custody in 2003, immigration authorities reinstated Moriel's 1995 deportation order and deported him. Moriel once again illegally reentered the United States, and immigration officials found him once again in July 2004. The government then charged Moriel with violating 8 U.S.C. § 1326.

All of this sounds a bit like a repeating refrain, as if Moriel was in a revolving door and continuously left the United States via deportation only very shortly thereafter to return illegally. However, something new was added in this case. This time Moriel challenged his underlying 1995 deportation order and filed a motion to dismiss the government's indictment on the ground that the IJ violated his due-process rights by not informing him of the opportunity to seek discretionary relief under sections 212(c) and 212(h) of the INA. The district court denied Moriel's motion. Moriel then pleaded guilty, reserving his right to appeal the district court's decision. Moriel received a seventy-month sentence for his illegal reentry.

In an unpublished disposition, we reversed the district court. *United States v. Moriel-Luna*, 244 F. App'x 810 (9th

Cir. 2007). We concluded that the record "disclosed sufficient information to infer that [Moriel] was eligible to petition for adjustment of status under INA § 245(a) along with a petition for waiver of deportation under either former INA § 212(c) or INA § 212(h)" and that the IJ "incorrectly informed Moriel that he was ineligible to apply for any relief from deportation." *Id.* at 812. We further held that Moriel presented a prima facie case of prejudice from the IJ's error of not informing him of section 212(c) relief and remanded so the district court could "determine whether the government can demonstrate that a visa was not immediately available, and thus Moriel is not entitled to relief." *Id.* at 813. Without an immediately available visa, Moriel could not adjust his status under section 245(a). *Id.*

On remand, and after a hearing to determine the facts, the district court again denied Moriel's motion to dismiss the indictment, this time on the ground that the government had proven any errors by the IJ did not cause prejudice because there was no visa immediately available to Moriel at the time of his deportation hearing. The district court concluded that a visa would not have been available for Moriel unless he had applied for one in 1990. The district court determined that mere speculation that Moriel could have obtained a visa in the future if he married his U.S.-citizen girlfriend or if his parents later applied for citizenship did not show that a visa was "immediately" available at the time of his deportation hearing.

The district court also entertained two arguments that Moriel raised for the first time on remand: First, the district court rejected Moriel's argument that his state firearm-assault conviction did not establish a basis for deportation. Second, the district court concluded that the IJ did not deny Moriel his right to counsel by proceeding with the deportation hearing after Moriel did not hire an attorney during the week-long continuance.

Moriel timely appealed the district court's denial on remand of his motion to dismiss the § 1326 indictment. After

considering the factual record and the dispositive legal principles, we affirm.

## II

We review de novo the district court's denial of a motion to dismiss an 8 U.S.C. § 1326 indictment when the motion to dismiss is based on alleged due-process defects in the underlying deportation proceeding. *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004). To prevail on such a motion, Moriel must establish that defects in the deportation proceeding violated his due-process rights and that he suffered prejudice as a result of those defects. *Id.* at 1048. Although Moriel need not conclusively demonstrate that he would have received relief to show prejudice, he must show that there were "plausible grounds for relief." *United States v. Gonzalez-Valerio*, 342 F.3d 1051, 1054 (9th Cir. 2003).

## III

**[1]** As we previously held, at the 1995 deportation hearing the IJ should have advised Moriel that he might have been eligible for relief from deportation under the former section 212(c) of the INA, 8 U.S.C. § 1182(c). Section 212(c) granted the Attorney General discretion to admit "[a]liens lawfully admitted for permanent residence who temporarily proceed abroad voluntarily and not under an order of deportation" even if the aliens would otherwise be excluded under 8 U.S.C. § 1182(a). By its terms, section 212(c) offers waivers only from a denial of admissibility, not from deportation. Therefore, in order to be eligible for section 212(c) relief, Moriel must also have applied for and received an adjustment of status, converting his deportation hearing into an admissibility hearing. Then, in an admissibility hearing, Moriel could have filed a petition to immigrate, allowing him potential relief via section 212(c). To adjust status, however, an alien must show that "an immigrant visa is *immediately* available to him at the time his application is filed." 8 U.S.C. § 1255(a) (emphasis

added); *Hernandez v. Ashcroft*, 345 F.3d 824, 843 (9th Cir. 2003) ("[I]n order for an applicant to be eligible for adjustment of status, an immigrant visa must be immediately available at the time of filing.").

The district court determined that under the applicable regulations limiting the number of immigrant visas available to particular aliens, a visa would only have been available to Moriel had he applied for one by March 1990, approximately five years before his deportation hearing, which he had not done. Moriel does not contest this part of the district court's decision. Instead, he argues that a visa could have been immediately available to him had he married his U.S.-citizen girlfriend or had one of his parents become a U.S. citizen during the deportation hearing. *See* 8 U.S.C. § 1151(b)(2)(A)(i) (exempting immediate relatives of U.S. citizens from numerical limits on visas). Moriel contends that the IJ should have informed him of these potential paths to obtain a visa and granted a continuance of the hearing until one of his parents became or Moriel married a U.S. citizen. We disagree.

**[2]** Moriel's argument is unpersuasive because he did not make the IJ aware of the engagement with his girlfriend or of the possibility that one of his parents might become a citizen. The IJ was required to "inform the alien of his or her *apparent* eligibility to apply" for section 212(c) relief. 8 C.F.R. § 242.17 (1995) (emphasis added); *see also United States v. Muro-Inclan*, 249 F.3d 1180, 1183 (9th Cir. 2001). Yet "[u]ntil the [alien] himself or some other person puts information before the judge that makes such eligibility 'apparent,' this duty does not come into play." *Moran-Enriquez v. INS*, 884 F.2d 420, 422 (9th Cir. 1989). We do not require IJs to speculate about the possibility of anticipated changes of circumstances and advise aliens of facts not suggested in the record. *See id.* ("IJs are not expected to be clairvoyant; the record before them must fairly raise the issue . . . .").

**[3]** Upon direct questioning, Moriel told the IJ that he was single. He mentioned neither his girlfriend nor any pending engagement. He also told the IJ that his parents were not citizens, and the record does not indicate that his parents applied for naturalization or were even eligible to apply at the time of the deportation hearing. This advice from Moriel to the IJ renders fatal his contention that he should have been advised of potential changes that might have rendered a visa immediately available. Neither the likelihood of a marriage of Moriel or the likelihood of parental citizenship was apparent on the record before the IJ, and the IJ was not required to inform Moriel of these potential methods of making a visa immediately available to him.[2] *See Bui v. INS*, 76 F.3d 268, 271 (9th Cir. 1996) ("The regulations do not require the IJ to scour the entire record or to interrogate an alien regarding all possible avenues of relief."). Stated another way, our precedent requires that an IJ advise an immigrant of potential avenues of relief that are apparent from the record before the IJ. However, our precedent does not require that an IJ act creatively to advise an immigrant of ways in which his legal prospects at forestalling deportation might improve with fundamental changes in his status.

---

[2]*United States v. Lopez-Velasquez* does not demand a different result. 568 F.3d 1139 (9th Cir. 2009). We held in *Lopez-Velasquez* that it is error for an IJ to not inform an alien of potential section 212(c) relief where the alien has not continuously resided in the United States for the requisite seven years but would accrue enough time if he or she appealed the IJ's decision. *Id.* at 1145. We reasoned that where the record raises a reasonable possibility that an alien may be eligible for relief, the IJ must so advise. *Id.* at 1143. Here, Moriel did not make the IJ remotely aware of his engagement or of his parents' possible citizenship application, so the record did not raise a reasonable possibility of relief in the event of an appeal or continuance. Moreover, an appeal alone would have been enough for the alien in *Lopez-Velasquez* to receive relief because he only needed the additional time an appeal would provide. *Id.* at 1144-45. Moriel, on the other hand, would have needed to take additional steps beyond an appeal or continuance. He needed the fundamental circumstances of his status to be changed; he needed not only time but also to either marry his U.S.-citizen girlfriend or to have his parents successfully petition for citizenship.

As the district court stated, "Moriel-Luna cites no authority for the proposition that the 'immediately available' requirement can be satisfied by the future possibility that an individual could take some action to place himself in a position such that he would have a visa immediately available." Nor does Moriel cite any such cases on appeal.[3] Instead, he relies on a written declaration by an immigration lawyer who states that IJs have regularly "granted a continuance of their deportation/removal hearing to allow the INS/CIS to process a relative's naturalization application, which if granted, [would] render the alien eligible for adjustment of status." Yet even if the statement is true, it refers only to filed applications awaiting processing, not applications that have yet to be filed.

[4] Because a visa petition had neither been filed on behalf of Moriel at the time of his hearing nor could have been filed by either his girlfriend or his noncitizen parents, the government has persuasively shown that a visa was not immediately available. Without an immediately available visa, Moriel could not have adjusted his status under section 245(a); therefore, Moriel could not obtain section 212(c) relief. The IJ's failure to inform Moriel of his section 212(c) options did not prejudice him.[4] *See Ubaldo-Figueroa*, 364 F.3d at 1047.

## IV

Moriel also argues that he suffered prejudice when the IJ

---

[3]Moriel cites *Bull v. INS*, 790 F.2d 869 (11th Cir. 1986), for the proposition that he could have married his girlfriend and immediately received a visa. But in *Bull*, the alien married a U.S. citizen *before* the deportation proceedings commenced. *See id.* at 869-70.

[4]Because we conclude that there is no due-process violation where the alien does not make the IJ aware of a pending engagement to a U.S. citizen or the possibility of the alien's parents later filing for citizenship, we need not address a situation in which the alien does inform the IJ of a pending engagement or possible future parental citizenship. We express no opinion whether the scope of required advice from the IJ might have been altered by either of these circumstances if presented.

did not inform him of potential relief under INA § 212(h), which grants the Attorney General discretion to waive admissibility restrictions if exclusion of an alien "would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien." 8 U.S.C. § 1182(h)(1)(B).

**[5]** Section 212(h), like section 212(c), is capable of waiving only a denial of admissibility, not deportation. Therefore, Moriel needed to adjust his status to receive section 212(h) relief. Moriel could not adjust his status because a visa was not immediately available; consequently, he was ineligible for section 212(h) relief.

Moriel submits that he did not have to adjust his status to receive section 212(h) relief. He relies on *In re Sanchez*, which held that an alien may obtain a section 212(h) waiver nunc pro tunc to cure a ground for inadmissibility that exists during a deportation hearing but did not exist at the time of a previous entry into the United States. 17 I. & N. Dec. 218, 222 (BIA 1980). Moriel argues that had the IJ informed him of possible 212(h) relief, he could have departed and reentered the United States before his deportation order became final and been eligible for a section 212(h) waiver without an adjustment of status.

**[6]** Moriel's argument is misplaced. If Moriel could have been eligible for section 212(h) relief without an adjustment of status by leaving and reentering the United States during his deportation hearing, then he also would have been eligible for section 212(c) relief by performing the same act. But by remanding Moriel's initial appeal on section 212(c) relief with instructions to determine whether a visa was immediately available, we implicitly rejected the possibility that Moriel could receive section 212(c) relief without adjusting his status. Moriel does not argue on this appeal that he is eligible for section 212(c) relief for this reason, and he cites no case holding that the government prejudiced an alien when the IJ did

not mention possible section 212(c) or 212(h) relief in a deportation hearing merely because the alien could have left and reentered but did not do so. The district court properly concluded that Moriel was ineligible for section 212(h) relief, absent an adjustment of status, because he never attempted to leave and reenter the United States prior to the finalization of the deportation order.[5]

## V

For the first time on remand,[6] Moriel further argued that he was eligible for section 212(c) relief without an adjustment of status because the government did not establish that his state

---

[5]Even if Moriel did not need to adjust his status for section 212(h) relief, the IJ's decision not to inform him of the relief was not prejudicial. Section 212(h) relief requires a finding that a relevant person would suffer extreme hardship from the exclusion. 8 U.S.C. § 1182(h)(1)(B). Extreme hardship "requires great actual or prospective injury or extreme impact on the citizen family member, beyond the common results of deportation." *Muro-Inclan*, 249 F.3d at 1184. At the time of Moriel's deportation, the only persons relevant under the statute were Moriel's parents. Yet the only evidence of hardship to Moriel's parents were each parent's identical declarations that "[t]he absence of my son during his incarceration has been very difficult on me and his family. It has devastated us emotionally and financially." Moriel's parents speak only of the alleged devastation of his incarceration, not his exclusion. *See* 8 U.S.C. § 1182(h)(1)(B). Moriel was not eligible for section 212(h) relief.

[6]The government asserts, without citation, that Moriel waived his new collateral attacks on his deportation hearing by not including them in his initial appeal. But the government conceded to the district court that "[t]he interests of justice thus favor an expeditious resolution of [Moriel's] claims, even those claims raised for the first time on remand." We exercise our discretion to address Moriel's new arguments. *See United States v. Kellington*, 217 F.3d 1084, 1092 (9th Cir. 2000) (holding that lower courts on remand "are free as to anything not foreclosed by the mandate") (internal quotation omitted); *see also Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th Cir. 2005) (permitting review of a new argument made on remand because the trial court had the opportunity to address it); *Columbia Steel Casting Co. v. Portland Gen. Elec. Co.*, 111 F.3d 1427, 1443 (9th Cir. 1996) (reviewing a legal issue raised for the first time on remand because review would not prejudice the opposing party).

firearm-assault conviction categorically satisfied the federal firearm statute. *See Taylor v. United States*, 495 U.S. 575 (1990).

At the time of Moriel's deportation hearing, a deportable alien was eligible for section 212(c) relief if the applicable ground for deportation was substantially identical to a ground for exclusion. *Komarenko v. INS*, 35 F.3d 432, 434 (9th Cir. 1994), *overruled by Abebe v. Mukasey*, 554 F.3d 1203, 1207 (9th Cir. 2009) (en banc) (per curiam). Our precedential view of equal protection at the time of his deportation hearing required that the government extend section 212(c) relief to aliens facing deportation if those aliens would have been eligible for the same relief had they left the United States and attempted to reenter. *Tapia-Acuna v. INS*, 640 F.2d 223, 225 (9th Cir. 1981), *overruled by Abebe*, 554 F.3d at 1207.

Although his briefing is vague, when charitably construed, Moriel's argument is that his firearm offense was not a valid ground for deportation and the remaining, valid grounds for deportation are substantially similar to the "crime involving moral turpitude" exclusion ground in section 212(a) of the INA.

**[7]** Regardless of the merits of Moriel's firearm-offense claim,[7] Moriel was still ineligible for section 212(c) relief

---

[7]Specifically, Moriel argues that the federal firearm definition, 18 U.S.C. § 921(a)(3), excludes antique firearms while the California statute for which he was convicted, Cal. Penal Code § 245(a)(2), does not. "The categorical approach [of *Taylor v. United States*] requires us to compare the elements of the statute of conviction . . . to the generic crime . . . and then to determine whether the full range of conduct covered by [the criminal statute] falls within the meaning of that term." *Perez v. Mukasey*, 512 F.3d 1222, 1225 (9th Cir. 2008). Because on the face of the statute it is possible for California to convict a defendant of firearm assault with an antique firearm but the federal government cannot do the same, California Penal Code section 245(a)(2) may not satisfy the categorical approach to determining a federal firearm offense. *See United States v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007).

without an adjustment of status. Setting aside the IJ's conclusion that Moriel was deportable for a firearm offense, the remaining ground for deportation—crime involving moral turpitude—was not the only ground for which Moriel was deportable. The government charged Moriel with deportation because he committed an aggravated felony, and the IJ's order of deportation adopted that ground. *See* 8 U.S.C. §§ 1251(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after entry is deportable."), 1101(a)(43)(F) (*aggravated felony* means a crime of violence for which the term of imprisonment imposed is at least five years); 18 U.S.C. § 16 (*crime of violence* means the use, attempted use, or threatened use of physical force or involves a substantial risk that physical force may be used in the course of committing the offense); *United States v. Romero-Rendon*, 220 F.3d 1159, 1160 (9th Cir. 2000) (affirming that California Penal Code section 245(a)(2) is a crime of violence). Because an aggravated felony is a deportable ground for which there was no substantially identical ground for exclusion, Moriel could not seek section 212(c) relief without adjusting his status.[8]

---

The government also may not be able to satisfy the modified categorical approach, which involves a "limited examination of documents in the record of conviction to determine if there is sufficient evidence to conclude that a defendant was convicted of the elements of the generically defined crime even though his or her statute of conviction was facially overinclusive." *Chang v. INS*, 307 F.3d, 1185, 1189 (9th Cir. 2002). Because none of the applicable judicial records identify the weapon Moriel used, his conviction may not meet the conditions of a federal firearm offense.

[8]Our recent holding in *Abebe v. Mukasey* may limit section 212(c) relief to aliens in admissibility proceedings, regardless of the grounds for deportation. 554 F.3d at 1207 ("We thus overrule *Tapia-Acuna*'s holding that there's no rational basis for providing section 212(c) relief from inadmissibility, but not deportation. . . . Since petitioner [in a deportation proceeding] was not eligible for section 212(c) relief in the first place, the BIA could not have committed an equal protection violation by denying him such relief."). Because we hold that Moriel was also deportable for committing an aggravated felony, we do not reach the applicability of *Abebe*.

## VI

**[8]** Finally, Moriel for the first time on remand argued that he was deprived of his right to counsel at his deportation hearing. 8 U.S.C. § 1362 guarantees an alien the right to counsel of his or her choice at personal expense in immigration proceedings. *Mendoza-Mazariegos v. Mukasey*, 509 F.3d 1074, 1080 (9th Cir. 2007). "To obtain a knowing and voluntary waiver of the statutory right to counsel, the IJ must (1) inquire specifically as to whether petitioner wishes to continue without a lawyer; and (2) receive a knowing and voluntary affirmative response." *Id.* (internal quotation omitted). Moreover, "[w]hen an immigrant has engaged counsel and the IJ is aware of the representation, if counsel fails to appear, the IJ must take reasonable steps to ensure that the immigrant's statutory right to counsel is honored." *Hernandez-Gil v. Gonzalez*, 476 F.3d 803, 808 (9th Cir. 2007). In addition, an IJ "must provide aliens with reasonable time to locate counsel and permit counsel to prepare for the hearing." *Biwot v. Gonzales*, 403 F.3d 1094, 1099 (9th Cir. 2005).

We will uphold the IJ's discretionary decision not to grant a continuance absent a showing of clear abuse. *Id.* Whether an IJ has provided a reasonable time to find counsel is a fact-intensive inquiry, consideration of which includes "any barriers that frustrated a petitioner's efforts to obtain counsel, such as being incarcerated or an inability to speak English." *Id.*

---

Moreover, at the time of Moriel's deportation hearing, *Komarenko* was good law holding, among other things, that a defendant convicted of California Penal Code section 245(a)(2) was not eligible for section 212(c) relief without an adjustment of status. 35 F.3d at 434. An IJ must inform the respondent of his or her apparent eligibility to apply for section 212(c) relief, and nothing about Moriel's creative argument was apparent during his deportation proceeding. Because then-applicable precedent weighed heavily against Moriel's argument, the IJ's actions did not make the deportation proceedings fundamentally unfair. *See Ubaldo-Figueroa*, 364 F.3d at 1047.

Moriel argues that he did not knowingly and voluntarily waive his right to counsel because the IJ did not inquire specifically regarding whether he wished to continue the hearing pro se. He also faults the IJ for not asking why the attorney who had entered an appearance eight months earlier was not present at the hearing and for telling Moriel that he would expect Moriel to continue pro se if he returned without counsel after the one-week continuance.

**[9]** Although the IJ did not explicitly ask Moriel if he waived his right to counsel, the IJ was not obligated to grant indefinite continuances if Moriel did not produce counsel but refused to waive his right. Here, the IJ informed Moriel of his right to counsel, asked if he would like to find an attorney, granted a one-week continuance, and provided him with a list of legal-services organizations in the area. The IJ certainly gave Moriel a reasonable time to get a new lawyer or to communicate with his prior lawyer. Also, the IJ's warning gave Moriel notice that the IJ would consider that Moriel was proceeding pro se if he did not obtain counsel during the continuance that was given and that another continuance would not be granted. Significantly, when the hearing resumed, Moriel did not ask for more time to find an attorney, mention the attorney who earlier made an appearance, or indicate that he had tried to find an attorney. Moriel spoke English and was not incarcerated, factors weighing against a lengthy continuance. *See id.* Accordingly, we hold that the IJ did not abuse his discretion by concluding that one week was a reasonable time for Moriel to find counsel and in telling Moriel that returning without an attorney would result in a waiver of his right to counsel. The IJ took reasonable steps to honor Moriel's right to counsel. *See Hernandez-Gil*, 476 F.3d at 808.

## VII

Moriel was ineligible to receive section 212(c) or section 212(h) relief absent an adjustment of status. In order to adjust his status, Moriel needed an immediately available visa.

Because a visa petition had neither been filed on behalf of Moriel at the time of his hearing nor could have been filed by either his girlfriend or his noncitizen parents, the government has shown that a visa was not immediately available. The IJ also did not deprive Moriel of his right to counsel. We affirm.

**AFFIRMED.**